**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: December 15, 2015
Date Decided: December 21, 2015

Mary Rinnier
301 Feryn Farms Drive
New Castle, DE 19720

Somers S. Price, Esquire
Potter Anderson & Corroon LLP
1313 N. Market Street, 6th Floor
Wilmington, DE 19899

Suzanne I. Seubert, Esquire
Suzanne I. Seubert, P.A.
1328 King Street
Wilmington, DE 19801

Re: *Mary L. Rinnier, Administratrix v.*
*Gracelawn Memorial Park Inc., et al.*
Civil Action No. 6473-ML

Dear Ms. Rinnier and Counsel:

This matter involves a petition by a mother to disinter the body of her daughter; the individual Respondent is the daughter's widower, the Petitioner's son-in-law. The daughter lived and died in Florida but is buried in a Delaware cemetery. Simply put, the Petitioner, Ms. Rinnier, believes that the Respondent murdered her daughter, Laura Bowdoin; via the disinterment and a subsequent autopsy, she seeks evidence to substantiate this belief. The matter is before me on exceptions to the Master's Final Report, which recommends denying Ms. Rinnier's petition. Upon *de*

*novo* review,[1] I find the exceptions untimely and unavailing, and deny the petition to disinter.  My reasons follow.

I would imagine that, if there can be a pain sharper than that caused by the untimely loss of a child, it is that arising from such a loss accompanied by the conviction that the loss resulted from unpunished foul play.  Whatever the true facts here, it is clear to me that this is the pain that Ms. Rinnier endures, and that she feels it a moral duty to pursue the truth of her daughter's death.  That pursuit has led her a long chase, in the State of Florida and in Delaware.  Its results, I imagine, go far beyond frustrating; they must be nigh unbearable.

Wanting a legal outcome, no matter how deeply and sincerely, does not make it so, however.  At stake here are the interests of others—the Respondent and a child—as well as the law of this jurisdiction with respect to exhumation of a body.  Ms. Rinnier's attempt to exhume her daughter's body has run afoul of those other interests and that settled law.  After a two-day trial before Master Legrow, the Master issued a thoughtful and thorough 26-page decision laying out her reasons for denying Ms. Rinnier's request for an order permitting disinterment of her daughter's corpse.  That Master's Final Report issued on November 24, 2015.  Ms. Rinnier has filed a Notice of Exceptions and the matter has been referred to me.

---

[1] *DiGiacobbe v. Sestak*, 743 A.2d 180, 183–84 (Del. 1999) ("[T]he standard of review for a master's findings—both factual and legal—is *de novo*.").  Because the grounds for exception do not turn on witness credibility, the review may proceed on the paper record.

Under Rule 144 of this Court, "any party taking exception shall file a notice of exceptions *within eleven days* of the date of the report."[2] Ms. Rinnier's Notice of Exceptions was not filed until December 11, 2015, after the eleven-day exceptions period had run. The Rule further provides that,

> [i]f a notice of exception to a final report is not timely filed, then the parties shall be deemed to have stipulated to the approval and entry of the report as an order of the Court.[3]

The Respondent has objected to the untimely notice of exception, and Ms. Rinnier has offered no explanation that in equity excuses the tardy filing. Because Ms. Rinnier did not take timely exception, she is deemed to have consented to the outcome recommended in the Report, and I do not require briefing or argument under Rule 144.

More fundamentally, I have reviewed the record in this case together with the Final Report. Ms. Rinnier takes exception to the Report on only two grounds. First, Ms. Rinnier argues that the record reflects that her daughter's hyoid bone may be interred along with her daughter's body, and if so, it may show evidence of strangulation. According to Ms. Rinnier, this is sufficient to amount to a "reasonable certainty" that the exhumation, contrary to the findings of the Master, will provide pertinent evidence on the question of foul play. Second, Ms. Rinnier suggests that

---

[2] Ct. Ch. R. 144(d)(1) (emphasis added).
[3] Ct. Ch. R. 144(c).

3

the Master improperly imposed a higher standard for exhumation because a prior autopsy had been conducted in this case. After *de novo* review, it is clear to me that these exceptions are without merit and that further proceedings before me would not result in a conclusion different from that reached by the Master, regardless of whether the exceptions were considered timely.

As the Master correctly found, this jurisdiction follows the standard for exhumation orders set forth in *McCullough v. Mutual Life Insurance Company of New York*.[4] That case recognizes that, as a general rule, notions of decency and respect for both the deceased and the living relatives of the deceased mean that an order of exhumation not be granted lightly. The *McCullough* Court indicated that a petitioner must demonstrate that the need for disinterment is not ascribable to fault on the part of the petitioner, and that it is "*reasonably certain* that an exhumation of the body will reveal something bearing on the rights of the parties which could not otherwise be discovered."[5] The Master found that Ms. Rinnier, as the movant here, had failed to demonstrate that there was a reasonable certainty that pertinent evidence would be produced by the exhumation. Without repeating the careful recitation of expert testimony that led the Master to that determination, I note that Ms. Rinnier provided the testimony of Dr. William Manion. It is Ms. Rinnier's

---

[4] 109 F.2d 866 (4th Cir. 1940) (cited with approval in *Equitable Life Assurance Soc'y of U.S. v. Young & Revel Inc.*, 250 A.2d 509, 510 (Del. 1969)).
[5] *McCullough*, 109 F2d at 869–70 (emphasis added).

4

theory that her daughter died, not as a result of the overdose of the drug Ambien found in her system, but that, while under the intoxication of Ambien, she was susceptible to, and was the victim of, strangulation or suffocation. Dr. Manion said that, if the body were exhumed, he would like to pursue further toxicology to determine if Ambien use was chronic by Ms. Rinnier's daughter, and that he would like to x-ray the hyoid bone and throat cartilage to see if a fracture had been missed by a prior autopsy in the case. Dr. Manion, however, did not testify whether the hyoid bone had been returned to the Decedent's body and buried with her after it was removed in the first autopsy. The Respondent offered the testimony of Dr. William Anderson, who testified that the original autopsy had been "complete," and that the hyoid bone had been removed during the initial autopsy because that procedure revealed that "the thyroid cartilage bones [were] intact," a determination which could not have been made without removal of the hyoid bone. Ms. Rinnier argues that these combined testimonies do not establish that the hyoid bone was *not* reinterred with the body, and that by pointing this out, she has complied with the requirement that she demonstrate to a reasonable certainty that the autopsy would bear on the issues here, by providing relevant evidence. Ms. Rinnier is incorrect.

First, the fact that no evidence indicates whether the hyoid bone is present with the body does not, to my mind, come close to demonstrating to a reasonable certainty that the hyoid bone *is* present and able to be disintered. Second, the

5

Master's determination did not rest simply on the question of whether the hyoid bone existed; nor did the preponderance of the medical testimony, which indicated that disinterment would not be fruitful, involve the hyoid bone. In fact, Dr. Anderson testified at length that other physical findings, fully described in the first autopsy, were inconsistent with the strangulation murder that Ms. Rinnier alleges. In addition, post trial, Dr. Anderson submitted an affidavit which disclosed that a complete dissection of neck in the original autopsy indicated no trauma. In short, Dr. Anderson testified that the initial autopsy ruled out Ms. Rinnier's theory of murder by strangulation. Ms. Rinnier's expert, Dr. Manion, opined only that there was a possibility that an exhumation and second autopsy could support Ms. Rinnier's theory, assuming it is true. Taking the evidence *in toto*, therefore, Ms. Rinnier has fallen short of demonstrating that it is even *more likely than not* that the exhumation would provide useful evidence, let alone a *reasonable certainty* that information would result that would bear on the issues at hand. Therefore, Ms. Rinnier could not prevail on her first exception, regardless of timeliness.

With respect to her second exception, Ms. Rinnier contends that the Master impermissibly changed the standard that Ms. Rinnier was required to meet in order to receive the order she seeks. She contends that the Master increased the burden of proof, on the improper ground that a prior autopsy had been conducted. Ms. Rinnier misinterprets the Final Report. In the Report, the Master, properly in my view,

6

simply considered the fact that a prior autopsy had been performed as pertinent to her analysis: it bore on the question of whether Ms. Rinnier had met the requisite standard by demonstrating to a "reasonable certainty" that exhumation will provide useful evidence not otherwise available. The fact of a prior autopsy—which both provides evidence itself not reliant on exhumation and which necessarily required removal of certain tissues, making the exhumation less likely to be valuable—was certainly pertinent to the Master's inquiry. The Master did not "alter the standard" or otherwise commit legal error. Again, even if timely, this exception could not prevail.

Upon review of the record, it is clear that, despite a remarkable effort on her part, Ms. Rinnier has been unable to show that the exhumation of her daughter's body is justified. There is no question that Ms. Rinnier is sincere in her beliefs and that she desperately wants to explore every avenue of learning the truth. It is also true that the interests and emotions of Ms. Rinnier's son-in-law and her granddaughter are at stake in this action, and that Ms. Rinnier has failed to meet the standard for exhumation, according to our case law: she has failed to demonstrate to a reasonable certainty that disinterment will be of utility. Application of that standard is reasonable and equitable here. The evidence presented at trial convinces me that to the extent questions exist regarding the cause of decedent's death, those same question would remain following exhumation and subsequent autopsy.

7

Nothing in this Letter Opinion, I am sure, will satisfy Ms. Rinnier or bring her the sense that justice has prevailed. In the more than seven years since Laura Bowdoin died, Ms. Rinnier has pursued every possibility to vindicate what she sees as a just result. She has performed every obligation that ties of love and blood can impose between mother and daughter. Sadly, however, there are some wounds that neither law nor equity can heal. For the foregoing reasons, and for all the reasons stated in the Final Report, the exceptions to Master LeGrow's November 24, 2015 Final Report are DENIED. The Petition to exhume the body of Laura Bowdoin is DENIED. To the extent that the foregoing requires an order to effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III