**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

TAMIKA R. MONTGOMERY-REEVES
VICE CHANCELLOR

New Castle County Courthouse
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

July 22, 2016

Ms. Andrea C. Beck
260 Golden Plover Drive
Bombay Woods
Smyrna, DE 19977

Brian T. McNelis, Esquire
Young & McNelis
300 South State Street
Dover, DE 19901

Re: ***Andrea C. Beck v. John A. Greim and Bombay Woods Maint. Corp.***,
Civil Action No. 10223-MA

Dear Ms. Beck and Counsel:

This Letter opinion addresses *pro se* Petitioner Andrea Beck's exceptions to the Master's final report dated February 22, 2016 ("Final Report"). For the reasons stated herein, the exceptions are granted in part and denied in part.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On October 10, 2014, Ms. Beck filed her complaint in this action (the "Complaint"). Ms. Beck allegedly is a homeowner in the Bombay Woods subdivision in Smyrna, Delaware (the "Development") and a former director and treasurer of Respondent Bombay Woods Maintenance Corporation ("Bombay"), which is a homeowners association. Respondent John Greim allegedly is a homeowner in the Development and the president of Bombay.

In the Complaint, Ms. Beck alleges that Respondents performed the following acts: 1) transferred funds without legal authority or approval from the director and disregarded proper budgeting and accounting procedures for Bombay's assets; 2) violated Bombay's bylaws, Bombay's maintenance declaration, and the Delaware General Corporation Law; 3) removed board members improperly; 4) failed to properly enforce the voting rights of Bombay's members and failed to properly notify members of upcoming community votes; 5) retained legal counsel using Bombay's funds without authority; and 6) failed to maintain Bombay's landscape, jogging trails, and storm water retention ponds.

Ms. Beck also filed numerous papers with the Court. On June 4, 2015, Ms. Beck filed praecipes for subpoenas, including subpoenas for the production of accounting records, tax records, and Bombay's insurance records, to which Respondents objected. On June 15, 2015, Ms. Beck moved for advancement of her attorneys' fees and expenses. On July 29, 2015, the Master denied Ms. Beck's motion for advancement of attorneys' fees and expenses, overruled Respondents' objection to Ms. Beck's discovery requests, and ordered production of Ms. Beck's requested documents (the "July Draft Report"). In a letter to the Master dated August 4, 2015, Ms. Beck stated as follows:

My intentions are to hire legal counsel for the community (the corporation). I am an open and honest individual, therefore, I find it necessary to inform you that I do not feel, that I have the abilities to continue this case without an attorney and the reason I had requested to be represented by counsel. The more I learn about this case, in research of other cases, I realize that I do not know enough to be successful for this community, (the members of this corporation), who are deserving of legal representation. . . .

. . . I truly believe we need an attorney for the corporation, (in the best interest of the community), to correct the errors made and to continue this case. I am pursuing this for the community, the corporation and last, to secure my investment (my home). I also recognize that I am a hindrance to the court, due to my clumsy and rambling correspondence. I respectfully ask the court to allow me the same legal privileges as the defendants; legal support through the entity's insurance policy that will allow me to provide the best service I can for this corporation. . . . If I need to engage an attorney first, and re-file a motion of advanced attorney fees after, I will do so. I will wait for the courts response. [1]

On August 10, 2015, Chancellor Bouchard entered an order approving the July Draft Report. Respondents produced some records to Ms. Beck, but on October 6, 2015, Ms. Beck moved for contempt to enforce the August 10, 2015 order. Respondents opposed the motion and requested a hearing to review the pending requests for records and subpoenas. Ms. Beck sent the Court a letter

---

[1] Docket Item ("D.I.") No. 53, at 2.

listing the matters she wanted to be considered during the hearing, stating the reasons for her subpoenas, and explaining the relief sought from this Court:

> My only intent for the records subpoenaed is to support my claim in this case, in that: Mr. Greim and Appointees are responsible for the damages of this corporation in their breach of fiduciary duties and the mismanagement of the corporation, violating the members. And, the personal violations towards the plaintiff in hate campaigns, (and slander), Mr. Greim and Appointees have and continue to conduct.[2]

On November 4, 2015, after reviewing Ms. Beck's letter, the Master issued a draft report (the "November Draft Report") concluding that Ms. Beck had asserted derivative claims on behalf of Bombay against Mr. Greim for alleged corporate misconduct.[3] Because a derivative plaintiff seeking to enforce a right of the corporation must be represented by counsel, the Master recommended dismissing the Complaint.[4] On November 9, 2015, Ms. Beck filed exceptions to the November Draft Report, which the parties briefed. On February 22, 2016, the Master adopted the November Draft Report as her Final Report. On February 26, 2016, Ms. Beck filed exceptions to the Final Report, which the parties briefed.

---

[2]     D.I. No. 58, at 3.

[3]     *Beck v. Greim*, C.A. No. 10223-MA (Del. Ch. Nov. 4, 2015) (DRAFT REPORT).

[4]     *Id.*

## II.     ANALYSIS

The Court has reviewed the record, determined that a hearing on the exceptions is unnecessary, and conducted a *de novo* review of the Final Report.[5]

Although the exceptions are not entirely clear, "[t]his Court has historically, as a court of equity, given a certain leeway to *pro se* litigants."[6] That leeway has been extended to Ms. Beck.  Ms. Beck appears to take four exceptions to the Final Report.

First, Ms. Beck appears to argue that the Master erred in finding Ms. Beck's claims against Mr. Greim are derivative claims on behalf of Bombay rather than deed restriction claims.  Specifically, Ms. Beck argues as follows:

> [t]he very backbone of this case is the numerous Deeds, Declaration Deed Restrictions, By-Laws and Certificate.  These documents execute the Plaintiff's rights as a homeowner and <u>resident</u> of this community.  The rights the Deeds provide have been violated by the Respondent which 10 Del. C. § 348.6 applies. . . . If Mr. Greim and Appointees fail in successfully operating this corporation, it violates the Plaintiff by decreased property value and failure to meet deed requirements.[7]

---

[5]     *DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999).

[6]     *Taglialatela v. Galvin*, 2016 WL 3752185, at * 3 (Del. Ch. July. 8, 2016) (citing *Durham v. Grapetree, LLC*, 2014 WL 1980335, at *5 (Del. Ch. May 16, 2014)).

[7]     Pet'r's Opening Br. 14.

I note, however, that in Ms. Beck's opening brief in support of exceptions to the Final Report, Ms. Beck quotes her October 26, 2015 letter to the Master as follows: "Mr. Greim and Appointees are responsible for the damages of this corporation in their breach of fiduciary duties and mismanagement of the corporation, violating the members."[8] Thus, the Court agrees with the Master's analysis in Final Report that Ms. Beck's purported corporate mismanagement or misconduct claims against Mr. Greim and anyone else on behalf of Bombay are derivative claims and that Ms. Beck must be represented by counsel in order to pursue them.[9]

Second, Ms. Beck requests "that this Court consider the specific activities Mr. Greim ha[d] taken in his efforts to threaten and harass [her]."[10] I need not

---

[8]     *Id.* at 15 (quoting D.I. No. 58, at 3). After the quote, Ms. Beck states: "Is a statement of looking forward; what possibly may result once this case is resolved? This case is its entirety is a deed restriction case." *Id.* The Court does not know what this means and declines to address further.

[9]     *See Transpolymer Indus., Inc. v. Chapel Main Corp.*, 582 A.2d 936, 1990 WL 168276, at * 1 (Del. Sept. 18, 1990) (TABLE) ("While a natural person may represent himself or herself in court even though he or she may not be an attorney licensed to practice, a corporation, being an artificial entity, can only act through its agents and, before a court only through an agent duly licensed to practice law."); *Lygren v. Mirror Image Internet*, 992 A.2d 1237, 2010 WL 626072, at *1 (Del. Feb. 23, 2010) (TABLE) ("[C]orporate appellants Parfi and Plenteous may not pursue this appeal because they are not represented by counsel, as required by Delaware law.").

[10]    Pet'r's Reply Br. 10.

consider this issue, as the Master determined correctly that this Court lacks subject matter jurisdiction over criminal matters.[11]

Third, Ms. Beck argues that the Master erred in not considering her purported 8 *Del. C.* § 225 claims. Ms. Beck alleges that she was elected as a director of Bombay and served as its treasurer until February 17, 2014 when two other purported directors attempted to remove her as a director and treasurer. Ms. Beck challenges her removal from the board and questions, among other things, whether Mr. Greim and Bombay's Vice President, Jeff Horvat, are properly elected members of the board.[12] Again, Ms. Beck's claims are not entirely clear, but to the extent that she seeks to pursue an action under 8 *Del. C.* § 225, she may proceed *pro se*.[13]

---

[11]   *See* 10 *Del. C.* § 342 ("The Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State."); *see also Doe v. Coupe*, 2015 WL 4239484, at * 5 (Del. Ch. July 14, 2015) ("[T]his Court historically has been careful not to interject itself into the law enforcement functions that properly fall within the jurisdiction of Delaware's courts of law.").

[12]   *See* Pet'r's Reply Br. 13 ("I question numerous things: What are the authorities that Mr. Greim has to propose a 2016 budget? . . . Why does Mr. Greim believe he is the President? . . . What authorities does Mr. Greim have in collecting funds? . . . What authority does Mr. Greim have in submitting a voting ballot for the Board of Directors?").

[13]   This Court has authority to determine "the validity of any election, appointment, removal or resignation of any director or officer of any corporation, and the right of any person to hold such office" pursuant to 8 *Del. C.* § 225(a). *See Nevins v.*

Fourth and finally, Ms. Beck appears to argue that the Master erred in determining that Ms. Beck's claims regarding Mr. Greim's failure to upkeep Bombay's common interest areas (*e.g.*, Bombay's landscape, jogging path, and storm water retention ponds) are derivative claims. Ms. Beck's letters to the Master appeared to narrow her original claims to derivative claims of misconduct or mismanagement brought on behalf of the corporation. Thus, the Master did not analyze whether the claims that Mr. Greim failed to upkeep Bombay's common interest areas may be pursued under 10 *Del. C.* § 348. I need not decide whether Ms. Beck may assert these claims under 10 *Del. C.* § 348 because the Master should be provided an opportunity to address any such arguments in the first instance.

In Ms. Beck's latest letter to the Court, she appears to abandon any potential remaining deed restriction claims in favor of pursing an action under the Common Interest Community Ombudsperson Act:

> If Your Honor feels that this case should not be in [this] Court, I respectfully request that this case be recommend[ed] for review and execution by State of Delaware, Common Interest Ombudsman, Christopher Curtin, Esq., allowing Counselor Curtin to implement

---

*Bryan*, 885 A.2d 233, 237 (Del. Ch.) (allowing *pro se* plaintiff Rafael Nevins to pursue an action under 8 *Del. C.* § 225 to determine the proper directors of the corporation), *aff'd*, 884 A.2d 512 (Del. 2005) (TABLE).

binding arbitration.  We did not have this entity at the time of my filing in order to resolve my membership rights. [14]

I refer Ms. Beck to the Common Interest Community Ombudsperson Act, in the event that she seeks to proceed with the Common Interest Ombudsman. [15]

## III.    CONCLUSION

For the foregoing reasons, the exceptions are granted in part and denied in part.

**IT IS SO ORDERED.**

Sincerely,

*/s/ Tamika Montgomery-Reeves*

Vice Chancellor

TMR/jp

---

[14]    D.I. No. 91, at 2.

[15]    29 *Del. C.* §§ 2540-2546.