**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| THE JEANNETTE T. MCDOWELL | ) | C.A. No. 2019-0515-PWG (JRS) |
| TRUST U/A 5/1/1996 | ) | |
| | ) | |
| IN THE MATTER OF: | ) | |
| THE JEANNETTE T. MCDOWELL | ) | ROW File No. 13133-S-PWG (JRS) |
| TRUST U/A 5/1/1996 | ) | |

## ORDER UPON REMAND

This ___8th___ day of March, 2021, the Court having reviewed the Order of the Supreme Court of Delaware, dated March 3, 2021, remanding this matter to this Court for further action, it appears to the Court that:

1.    On June 8, 2020, this Court entered an Order Overruling Exceptions and Affirming Master's Order (the "Order"), in which it affirmed decisions of a Master in Chancery denying exceptions brought by John W. McDowell, Jr. ("Mr. McDowell") to the First and Final Accounting for the Estate of Jeannette T. McDowell and granting a Petition to Terminate Trust Or In the Alternative Appoint a Trustee (the "Petition") for the Jeannette T. Powell Trust (the "Trust").[1]

---

[1] D.I. 38.

2. Mr. McDowell appealed the Order on June 29, 2020.[2] After full briefing, the Supreme Court remanded the matter to this Court to address Mr. McDowell's exceptions relating to the Trust. Upon review of the Order, this Court agrees that the exceptions relating to the Trust were not adequately addressed in the Order.

3. The Trust provides that Donald L. McDowell ("Donald") is to serve as successor trustee of the Trust.[3] The Trust is to be administered for the benefit of its beneficiaries, with Mr. McDowell to receive all net income from the Trust during his lifetime, Mr. McDowell's son, John W. McDowell, III, to receive all net income from the Trust following his father's death, and the then-remaining principal of the Trust to be distributed *per stirpes* to four remainder beneficiaries upon the death John W. McDowell, III.[4]

4. In failing health, Donald, then 88 years old, petitioned the Court of Chancery either to terminate the Trust or appoint a substitute trustee.[5] Notice of the Petition was given to all constituents with an interest, including Mr. McDowell, his

---

[2] D.I. 39.

[3] D.I. 1, Ex. A ("Trust"), Art. 2A.

[4] *Id.* Art. 7.

[5] D.I. 1. The Trust named Wilmington Trust Company as successor trustee if Donald is unable to serve, but Wilmington Trust renounced because the Trust assets did not meet Wilmington Trust's minimum assets under management threshold. Trust, Art. 2A.

son and the living remainder beneficiaries. Mr. McDowell and his son appeared at the October 31, 2019 hearing on the Petition and stated their positions that the Trust should be terminated.[6] Both opposed the appointment of a substitute trustee.[7] More specifically, Mr. McDowell maintained the Trust should be terminated and the *corpus* of the Trust should immediately be distributed 50% to him and 50% to his son.[8]

5. At the conclusion of an often contentious hearing, the Master announced her final ruling on Donald's Petition.[9] Donald was relieved as trustee; the Petition to terminate the Trust was denied; and the alternative Petition to appoint a substitute trustee, Supportive Care Solutions, Inc. ("Supportive Care"), was granted. The Master explained that, in keeping with the paramount importance of adhering to the intent of the testator, termination of the Trust could not be justified on the record before the Court. The Master also explained that Donald had done his best to find a substitute trustee that would comply with the Trust's requirements, but

---

[6] D.I. 21. (Transcript of October 31, 2019 hearing on Petition to Terminate) ("Tr."), at 16, 21.

[7] *Id.* at 17, 22.

[8] *Id.* at 38.

[9] *Id.* at 13, 16, 40–41, 48–49 (examples of Mr. McDowell's behavior during the hearing).

after an exhaustive search, no qualified trust institutions would agree to serve.[10] Accordingly, the Master approved the appointment of Supportive Care as substitute trustee for the Trust, a provider well-known to the Court as providing excellent fee-for-service fiduciary guardianship services.[11]

6.      Mr. McDowell filed exceptions to the Master's decision. In essence, Mr. McDowell reiterated his position that the Trust should be terminated and its *corpus* distributed immediately to him and his son. As for the appointment of Supportive Care as substitute trustee, Mr. McDowell's principal objection was that he had "never heard of" Supportive Care prior to the filing of Donald's Petition.[12]

7.      The Court has conducted a *de novo* review of the factual and legal conclusions in the Order.[13] The Court has carefully reviewed the record and has determined that it is possible to conduct a *de novo* review without conducting a further evidentiary hearing.[14] The exceptions do not turn on dispositive credibility determinations that would require the Court to view the witnesses.[15]

---

[10] Counsel for Donald spoke with 25 qualified trust institutions. For various reasons, none would agree to serve. Tr. at 33–35.

[11] *Id.* at 42–47.

[12] D.I. 14.

[13] *See DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999).

[14] *See id.*

[15] *See id.*; *accord Lynch v. City of Rehoboth Beach*, 2005 WL 2000774, at *1 (Del. Ch. Aug. 16, 2005) ("When the parties except to one or more of the Master's findings from the

8. The Court of Chancery may appoint a trustee for a Delaware trust when it concludes that the "objects and purposes of any such trust are in danger of not being performed or effectuated."[16] When determining whether to appoint a trustee, the court's first reference point is the intent of the settlor as stated in the trust document, and such intent "should not be disregarded in the absence of compelling circumstances."[17] But, in circumstances where "a settlor's express intent runs up against circumstances that it is obvious the settlor never foresaw at the creation of the trust," the court may depart from the trust and exercise its appointment power in a manner it determines best furthers the purpose of the trust.[18]

9. Here, the designated trustee, Donald, is no longer able to serve in that capacity. The settlor's choice for successor trustee, Wilmington Trust, has renounced as permitted by the Trust.[19] The trustee's counsel diligently searched for a substitute trustee that would meet the requirements set forth in the Trust for an

---

evidence in the case, the Court can read the record that is relevant to the exceptions raised and draw its own factual conclusions.").

[16] 12 *Del. C.* § 3501.

[17] *McNeil v. McNeil*, 798 A.2d 503, 514 (Del. 2002).

[18] *Hurd v. Hurd*, 2020 WL 504980, at *1 (Del. Ch., Jan. 31, 2020).

[19] Trust, Art. 3D.

institutional trustee.[20]  None were willing to serve.[21]  Accordingly, Donald filed a Petition that presented the Court with two alternatives: either terminate the Trust or appoint a substitute trustee that does not match the criteria set forth in the Trust.

10.     The Master conducted a thorough evidentiary hearing during which she heard from all concerned.  At the conclusion of the hearing, in ruling on the Petition, the Master began where the Court must begin: with a review of the Trust itself. There, the settlor made clear her intent that the *corpus* of the Trust should be administered not by Mr. McDowell or his son, but by a trustee.[22]  Nothing in the Trust suggests the settlor was comfortable turning over the *corpus* of the Trust directly to these beneficiaries.  Nor is there evidence the settlor intended the *corpus* of the Trust to be distributed directly to Mr. McDowell and his son without regard for the remainder beneficiaries.  Thus, the Trust itself revealed the settlor would not have supported termination of the Trust under the circumstances.

11.     The Master then concluded that all reasonable efforts had been made to comply with the settlor's intent with respect to the appointment of a successor trustee.  But no institutional trustee that met the criteria was willing to serve, thus revealing it was impossible to fulfill the letter of the Trust regarding the appointment

---

[20] Trust, Art. 2B.

[21] Tr. at 33–35.

[22] Trust, Art. 7.

of a successor trustee. There was no meaningful challenge to that conclusion offered at the hearing, and none has been offered since. Finally, the Master reviewed the qualifications of the proffered substitute trustee, Supportive Care, and concluded that its extensive experience serving as fiduciary in its role as guardian of the property of adult wards made it a worthy candidate to serve as trustee of the Trust under the circumstances.

12.     After *de novo* review, I am satisfied the Master's decision was well grounded in the law and the facts of record. I see no basis to overturn it.[23] Termination of the Trust is contrary to the settlor's intent as stated in the Trust. And, failing the agreement of a trust institution meeting the criteria stated in the Trust to serve as trustee, Supportive Care is a qualified substitute trustee given its extensive experience serving in a fiduciary capacity in the protection and administration of property for the benefit of others.

13.     Based on the foregoing, the exceptions to the Order are overruled and the Master's decision is affirmed.

**IT IS SO ORDERED.**

_/s/ Joseph R. Slights III_
Vice Chancellor

---

[23] *In re Erdman*, 2011 WL 2191680, at *1 (Del. Ch. May 26, 2011).