SAM GLASSCOCK III
VICE CHANCELLOR

**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: October 13, 2021
Date Decided: March 1, 2022

Eric M. Andersen, Esq.
Andersen Sleater Sianni LLC
Two Mill Road, Suite 202
Wilmington, Delaware 19806

Steven L. Caponi, Esq.
Matthew B. Goeller, Esq.
K&L Gates LLP
600 King Street, Suite 901
Wilmington, Delaware 19801

> RE: *Houseman et al. v. Sagerman et al,*
>     C.A. No. 8897-VCG

Dear Counsel:

This matter is a long-running dispute between the two parties, currently before me for the second time[1] on the Plaintiffs' exceptions to the Special Master's detailed final report of October 19, 2020 (the "Final Report").[2] The standard of review applicable to master's exceptions is *de novo* review, but in this instance it is proper to review the exceptions on the record.[3] The Plaintiffs agreed at oral argument

---

[1] *See generally Houseman v. Sagerman*, 2021 WL 3047165 (Del. Ch. July 20, 2021) (the prior Memorandum Opinion addressing certain of the Plaintiffs' exceptions).
[2] *See* Final Report by Special Master James P. Dalle Pazza on Oct. 19, 2020, Dkt. No. 204 [hereinafter "Final Report"].
[3] *See DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999).

before me that they were content to have the exceptions decided on basis of the record created before the Special Master.

The Final Report, which followed a draft report[4] and a 2017 hearing in the form of a trial,[5] was mostly favorable to the defendant Thomas Whittington, who acted as the shareholders' representative (the "Shareholder Representative") in connection with the underlying transaction (the "Merger") at issue.[6] The Merger was a transaction between Universata, Inc. ("Universata") and a subsidiary of HealthPort Technologies, LLC (the "Buyer"), and the Merger documentation (the "Merger Agreement") contemplated an escrow account for holdback of amounts that could later be used to satisfy indemnification claims.[7]

The Plaintiffs have taken exceptions, which they have styled as "General Exceptions" or "Specific Exceptions."[8] I addressed the General Exceptions in a Memorandum Opinion dated July 20, 2021 (the "July Opinion").[9] The overarching General Exceptions were as follows. First, the Plaintiffs asserted that the Special Master used the wrong standard of review in assessing actions the Shareholder

---

[4] Draft Report by Special Master James P. Dalle Pazze on Mar. 2, 2020, Dkt. No. 196.

[5] *See* Letter Ruling on Pls.' Evidentiary Objs. by Special Master James P. Dalle Pazze on 10-30-18 1, Dkt. No. 185 (identifying in the introduction the previous Special Master's Hearing in the form of a trial).

[6] *See* Final Report 4, 9–12.

[7] *See id.* at 1, 4–5, 8–9.

[8] *See, e.g.*, Pls. Br. Supp. Exceptions to the Special Master's Final Report, Dkt No. 206 (table of contents organizing brief by "general exceptions" and "specific exceptions").

[9] *See generally Houseman*, 2021 WL 3047165.

Representative took in connection with the Merger and certain related litigations.[10] The Plaintiffs sought an "accounting" review,[11] which their counsel clarified at oral argument would be equivalent to an entire fairness review.[12] The Special Master had used an abuse of discretion standard of review.[13] Second, the Plaintiffs contended that a certain subset of stockholders of Universata, denominated the "Owners" in the Merger Agreement, should have been fiscally responsible for all indemnification claims arising from the Merger (the "Second General Exception").[14] Instead, the Special Master found that indemnification claims were to be paid first from the escrow account that had been funded by the Buyer with Merger consideration on behalf of all Universata stockholders.[15]

I found that the Special Master had correctly ruled with respect to the Second General Exception.[16] As to the standard of review used to assess the Shareholder Representative's actions, I found that the applicable standard was subjective good faith.[17] After I made these findings, I asked counsel for supplemental briefing on the Plaintiffs' so-called "Specific Exceptions," which took issue with various

---

[10] *Id.* at *4.
[11] *Id.* at *5.
[12] *Id.*
[13] *Id.* at *6; *see also* Final Report 39.
[14] *See Houseman*, 2021 WL 3047165, at *4.
[15] *Id.*
[16] *Id.* at *4–5.
[17] *Id.* at *6.

3

discrete findings of the Final Report.[18]  The supplemental briefing was intended to provide clarification as to whether, in the parties' view, the new standard of review changed any of the analysis of the Specific Exceptions.

To be candid, the supplemental briefing did not assist in clarifying the matter.

The Plaintiffs' opening supplemental memorandum reworks the Second General Exception, attempting to clarify their prior arguments, and requesting that I "revisit" the prior ruling thereupon in the July Opinion.[19]  Although not styled as such, the request is essentially a motion for reargument.  It is therefore untimely.

Court of Chancery Rule 59(f) specifies that a motion for reargument may be served and filed within five days after the filing of the Court's opinion.[20]  The prior opinion was issued on July 20, 2021;[21] the revisitation request was not made until the filing of the supplemental opening memorandum on August 29, 2021.[22]

The Plaintiffs, in their supplemental reply memorandum, point to the dearth of cases where a court requests supplemental briefing and then refuses to consider the supplemental briefing because a Rule 59(f) motion was not made.[23]  This would,

---

[18] *Id.* at *7.
[19] Pls. Suppl. Mem. Supp. Exceptions to the Special Master's Final Report 2–4, Dkt. No. 216 [hereinafter "Pls. OB"].
[20] Ch. Ct. R. 59(f); *see also In Forma Pauperis & Complaint/Motion for Declaration of Rights/Motion for Injunctive Relief*, 2016 WL 6642516, at *1 (Del. Ch. Oct. 24, 2016).
[21] *Houseman*, 2021 WL 3047165.
[22] *See* Pls. OB.
[23] Pls.' Suppl. Reply Mem. Supp. Exceptions to the Special Master's Final Report 4, Dkt. No. 218 [hereinafter "Pls. RB"].

indeed, be nonsensical. It is also not what happened here. I made findings in the July Opinion, including that the standard of review for the actions of the Shareholder Representative was subjective good faith.[24] The request with respect to supplemental briefing sought whether "any conclusions of the Special Master should be reconsidered following my decision as to the *standard of review* . . . ."[25] The supplemental briefing request, in short, was limited to those matters affected by my decision with respect to the standard of review. The Second General Exception does not fall into this category. The Plaintiffs disagree with my conclusions in July Opinion; any reargument should have been under Rule 59(f).[26] To the extent the Plaintiffs still seek to demonstrate error in the July Opinion, the remedy is via appeal.

The Plaintiffs also suggest in their opening supplemental memorandum that they should be permitted to amend their complaint, citing as justification my finding in the July Opinion that the contractual standard of review here is subjective good faith.[27] They wish to add a new count for breach of the Merger Agreement by the Shareholder Representative, which they suggest should be followed by additional discovery and a new trial wherein this Court makes credibility determinations about the Shareholder Representative's actions.[28] I note that this request is inconsistent

---

[24] *Houseman*, 2021 WL 3047165, at *6.

[25] *Id.* at *7.

[26] *See, e.g.*, *Silverberg v. Padda*, 2019 WL 5295141, at *1 (Del. Ch. Oct. 18, 2019) (motion for reargument despite an order for supplemental briefing).

[27] Pls. OB 4–6.

[28] *See id.* at 5–6.

with the Plaintiffs' earlier concession that this matter could be addressed solely upon the record; I note as well that the Plaintiffs have not pointed to any finding by the Special Master that is susceptible of a different outcome following the application of the subjective good faith standard of review, rather than "abuse of discretion."[29]

While the Plaintiffs do not style this suggestion as a separate motion for leave to amend, I consider it, nonetheless.[30] At this stage, under Rule 15(a), the Plaintiffs are not entitled to amend the complaint but are seeking the leave of the Court to do so.[31] Such leave should be "freely given when justice so requires,"[32] and ultimately rests on the Court's discretion.[33] In exercising that discretion, the Court may consider facts "such as bad faith, undue delay, dilatory motive, repeated failures to cure by prior amendment, undue prejudice, and futility of amendment."[34]

Courts applying Rule 15(a) generally do so allowing for "liberal" amendment.[35] However, there are limits imposed by justice and equity to this generous approach. A 2008 Court of Chancery case I will refer to as *Lloyd's* is helpful.[36] That Court denied the plaintiffs' motion for leave to amend their

---

[29] *See, e.g.*, Final Report 39.
[30] Pls. OB 4–6.
[31] Ch. Ct. R. 15(a); *see also* Pls. OB 6.
[32] Ch. Ct. R. 15(a).
[33] *Fields v. Kent Cty.*, 2006 WL 345014, at *4 (Del. Ch. Feb. 2, 2006) (quoting Ch. Ct. R. 15(a)).
[34] *NACCO Indus., Inc. v. Applica Inc.*, 2008 WL 2082145, at *1 (Del. Ch. May 7, 2008).
[35] *Those Certain Underwriters at Lloyd's v. Nat'l Installment Ins. Servs., Inc.*, 2008 WL 2133417, at *7 (Del. Ch. May 21, 2008).
[36] *Id.*

complaint for the fifth time post-trial and following the issuance of a post-trial opinion.[37] The claim the plaintiffs there sought to add had actually been pursued in a concurrent litigation, and the Court mentioned in passing that the decision to leave the claim out of the Delaware action may have been strategic.[38] Ultimately, however, the Court denied the motion on basis of lack of timeliness—noting that the plaintiffs could have brought the claim in question at any time "since the beginning of the litigation"—as well as undue prejudice worked on the defendants (who would not have had an opportunity to prepare responses to the new issues).[39]

The Plaintiffs here seek to amend the complaint for the third time.[40] A hearing in the form of a trial took place before the Special Master in October 2017.[41] Since then, a draft report, a Final Report, and the July Opinion have been issued.[42] As noted in *Lloyd's*, the Plaintiffs have not cited any Delaware caselaw allowing for amendment of a complaint under Rule 15(a) following trial and the issuance of a post-trial opinion.[43] Also similarly to *Lloyd's*, no final judgment has yet been

---

[37] *See id.* at *1, *7–8.
[38] *Id.* at *8.
[39] *Id.* at *7–9.
[40] *See* Compl., Dkt. No. 1, Sept. 12, 2013; Am. Compl., Dkt. No. 61, July 2, 2014; Am. Verified Compl., Dkt. No. 106, Nov. 3, 2014.
[41] *See Houseman*, 2021 WL 3047165, at *3.
[42] *See id*; *see generally Houseman*, 2021 WL 3047165.
[43] *See generally* Pls. OB; Pls. RB.

7

entered;[44] this case has languished in exceptions purgatory for multiple years.[45] The Plaintiffs' basis for seeking the amendment is essentially that Count II cannot be vindicated and therefore they should now be allowed to plead a new count for breach of contract. This is not, I note, a mere question of amending to reflect new facts, but essentially asserts a new legal theory at an acutely late stage of the proceedings.

Nothing prevented the Plaintiffs from bringing a breach of contract claim against the Shareholder Representative in the first instance; the theory of the case has always involved the Merger Agreement and actions the Shareholder Representative took in connection therewith, such that a breach of contract claim against him should have been apparent before the matter was tried by the Special Master. In such a case, justice strongly supports a denial of a motion to amend.

My denial of the request to amend the complaint under Rule 15(a) rests on the untimeliness of the request and the prejudice implied to the Shareholder Representative if an amendment were permitted, followed by discovery, and then followed by a new trial. This request is therefore denied.

Having resolved the overarching issues of the appropriate standard of review of the Shareholder Representative's actions and the source of funds for any required

---

[44] *Lloyd's*, 2008 WL 2133417, at *8.
[45] Unfortunately, due to an oversight on my part, the review which is the subject of this Letter Opinion has also languished, for more than ninety days after the submission of the supplemental memoranda. I regret the inconvenience to the parties caused thereby.

indemnification, I now turn to the Specific Exceptions. The Plaintiffs' Specific Exceptions, as I understand them from the briefing on exceptions and the supplemental memoranda, all relate to distribution of Universata funds or Merger consideration. They may be characterized thus: (1) the Special Master's approval of payment to Whittington & Aulgur, the Shareholder Representative's law firm ($337,485.18); (2) the Special Master's approval of a payment to Sagerman ($31,500); (3) the Special Master's approval of a payment to Sergio ($36,100); (4) the Special Master's approval of payments in connection with the Minnesota litigation's defense ($105,846.60); (5) the Special Master's approval of payments to Laird and Vinton ($20,000); (6) the Special Master's approval of payments to Database Logic ($35,464.76 *and* $3,184.53); (7) the Special Master's partial approval of payments to Whittington & Aulgur associated with litigation filed by David Ferrel (in my understanding, the disputed amount following the Final Report is $7,500);[46] (8) the Special Master's treatment of payments "From Houseman" ($36,860); and finally (9) the Special Master's denial of the Plaintiffs' request for

---

[46] The Plaintiffs' original briefing in support of exceptions indicated that the amount in dispute was $15,000. Pls. Br. Supp. Exceptions to the Special Master's Final Report 24, Dkt No. 206. The Final Report also discussed the challenged amount of $15,000. *See* Final Report at 55. The Final Report, however, recommended that Whittington bear half of the legal defense fees ($7,500). *Id.* at 57. In my understanding, then, the Plaintiffs take exception to the fact that, after the Final Report, the remaining $7,500 associated with the Ferrel litigation was to be borne by Universata.

"lost" interest ($109,709.32).[47] Specific Exception (2) is based upon the Plaintiffs' belief that Section 12.16(a)(iv) of the Merger Agreement is not applicable to them,[48] and is thus precluded by my finding in the July Opinion that the Shareholder Representative's actions are binding on all stockholders, including the Plaintiffs.[49] The Plaintiffs did not provide amended reasoning in support of Specific Exception (2) in their supplemental memoranda.[50] Therefore, that exception is denied.

As to the remainder of the Specific Exceptions, as noted previously, the supplemental briefing on these issues was less helpful than I had hoped. Accordingly, and although I noted in the July Opinion that I would not require further argument following the supplemental briefing, I find it appropriate to hold a teleconference, at the conclusion of which I intend to resolve the remaining exceptions from the bench, to the extent possible. The parties should contact my assistant promptly to schedule the teleconference.

---

[47] *See generally* Pls. Br. Supp. Exceptions to the Special Master's Final Report 9–27, Dkt No. 206 (presenting Specific Exceptions (1) through (9) by subpart).
[48] *See id.* at 18–19.
[49] *Houseman*, 2021 WL 3047165, at *6.
[50] *See* Pls. OB; Pls. RB; *see also* Pls. OB 21 ("Plaintiffs rely upon their briefing filed on November 17, 2020 and January 10, 2021 in regarding to their Specific Exceptions concerning the disbursements to former director[] Sagerman . . . .").

Accordingly, the Plaintiffs' Specific Exceptions are DENIED in part and continued in part. To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III