**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: March 1, 2022
Date Decided: April 8, 2022

Eric M. Andersen, Esq.
Andersen Sleater Sianni LLC
Two Mill Road, Suite 202
Wilmington, Delaware 19806

Steven L. Caponi, Esq.
Matthew B. Goeller, Esq.
K&L Gates LLP
600 King Street, Suite 901
Wilmington, Delaware 19801

RE: *Houseman et al. v. Sagerman et al,*
    C.A. No. 8897-VCG

Dear Counsel:

This action is before me with respect to the Plaintiffs' remaining Specific Exceptions taken to the Special Master's Final Report of October 19, 2020.[1] As noted in my Letter Opinion of March 1, 2022,[2] the parties have previously agreed that it is proper for me to review the exceptions on the record. I do so and review

---

[1] Final Report by Special Master James P. Dalle Pazze on Oct. 19, 2020, Dkt. No. 204 [hereinafter "Final Report"]; *see also* Exceptions to Special Master's Final Report, Dkt. No. 205.
[2] *Houseman v. Sagerman*, 2022 WL 598977, at *1 (Del. Ch. Mar. 1, 2022).

the Special Master's conclusions, both factual and legal, *de novo* in accordance with *DiGiacobbe v. Sestak*.[3]

I have previously denied one of the Specific Exceptions, challenging a payment made to Sagerman, as that Specific Exception was predicated upon an argument earlier rejected in this case.[4]

The following Specific Exceptions remain:

- o The Special Master's approval of payment to Whittingon & Aulgur, the Shareholder Representative's law firm;

- o The Special Master's approval of a payment to Sergio;

- o The Special Master's approval of payments in connection with the Minnesota litigation's defense;

- o The Special Master's approval of payments to Laird and Vinton;

- o The Special Master's approval of payments to Database Logic;

- o The Special Master's partial approval of payments to Whittington & Aulgur associated with litigation filed by David Ferrel;

- o The Special Master's treatment of payments identified as "from Houseman"; and finally

- o The Special Master's denial of the Plaintiffs' request for lost interest.[5]

---

[3] 743 A.2d 180, 184 (Del. 1999).
[4] *Houseman*, 2022 WL 598977, at *4.
[5] *See id.*

*DiGiacobbe* instructs that the court "may read the portion of the record relevant to the exception raised and draw its own factual conclusions" in evaluating master's exceptions where a new hearing is not required.[6] I have therefore reviewed the Plaintiffs' briefing and supplemental memoranda in detail and have cross-referenced the trial transcripts, joint exhibits, and other associated exhibits to aid in my understanding of the matter.

Upon the record before me, I find that the Special Master correctly found and applied the law, with the single exclusion of the standard of review applicable to the actions of the Shareholder Representative, as described in detail in my Memorandum Opinion of July 20, 2021.[7] As described therein, the standard of review applicable to the Shareholder Representative's actions is that of subjective good faith.[8] Supplemental briefing was submitted to address whether this change in standard of review should affect my consideration of the Specific Exceptions.[9] Even with the benefit of the supplemental briefing, the application of the subjective good faith standard to review of the Shareholder Representative's actions does not, to my mind, affect any of the Special Master's findings.

---

[6] 743 A.2d at 184.
[7] *Houseman v. Sagerman*, 2021 WL 3047165, at *6 (Del. Ch. July 20, 2021).
[8] *See id.*
[9] *See, e.g.*, Pls.' Suppl. Mem. Supp. Exceptions to the Special Master's Final Report, Dkt. No. 216; Pls.' Suppl. Reply Mem. Supp. Exceptions to the Special Master's Final Report, Dkt. No. 218.

As such, I deny the remaining Specific Exceptions. After reviewing the memoranda, briefing, and citations thoroughly, I am satisfied that the Special Master's report treated each of the Specific Exceptions appropriately.[10] There is no basis for reaching any different factual conclusions, in my view, even following the extensive briefing that has been undertaken in this matter. I therefore adopt the Special Master's Final Report dated October 19, 2020, with the exception of the

---

[10] In the Special Master's otherwise detailed report, one lacuna exists that gave me pause in conducting *de novo* review of the factual findings. The Special Master ultimately determined that a $36,860 payment made to Whittington personally and denominated "from Houseman" on the Whittington and Aulgur trust account transaction detail report could remain with Whittington. Final Report 60. A brief background is helpful. Whittington (in his personal capacity) and Universata, Inc. had entered into a release absolving Universata, Inc. of any reimbursement obligation to Whittington for any financial loss relating to a put right belonging to the Housemans. *See* JX 34; *Houseman*, 2021 WL 3047165, at *2. That release provided Whittington with a $100,000 payment. JX 34 at SMP-3268. At the Special Master's hearing, Whittington testified that he had also been authorized to receive a "second, undisclosed" $50,000 payment in connection with the put liability. *See* Final Report 58; Trial Tr. 786:19–24. Whittington testified that the $50,000 was not disclosed because "the whole concept was that the Housemans would not know about the additional $50,000 in costs," in order, presumably, to cabin their negotiating leverage. Trial Tr. 788:3–7. The Special Master found that the purpose behind the $50,000 payment was "to provide Whittington with additional room to negotiate a resolution with the Housemans" regarding the put. Final Report 58. The Special Master then found that "it is unusual that Whittington took only $36,860 of this $50,000 secret payment," but he determined that, in any event, the $36,860 was not due to the Housemans personally. *Id.* The question not addressed by the Special Master, to my mind, was whether the $36,860 amount ought to have been withdrawn by Whittington for his personal benefit or whether it was owed to the stockholders. After reviewing the papers and the testimony, it appears to me that the $50,000 payment accepted by the Special Master was a continuation of the $100,000 documented payment owed to Whittington in his personal capacity. *See* JX 34; *see also* Final Report 58–60 (discussing the $50,000 as a contextual "second" payment following the "initial" disclosed $100,000 payment); Trial Tr. 787:3–788:17 (Whittington testifying about the "$150,000" he had handy to "buy" the put). I am therefore satisfied that the Special Master's conclusion with respect to the payment "from Houseman" is correct.

4

standard of review applicable to the Shareholder Representative's actions, which I have found is subjective good faith.[11]

IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III

---

[11] *See Houseman*, 2021 WL 3047165, at *6.