**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

BBP HOLDCO, INC., BBP INVESTMENT )
HOLDINGS LLC, BRUNSWICK BOWLING )
PRODUCTS, LLC, BRUNSWICK BOWLING )
MAGYARORSZAG KORKLATOLT )
FELELOSSEGU TARSASAG, and BBP )
REYNOSA S. DE R.I. DE C.V., )
                                     )
                    **Plaintiffs,** )
                                       )
       **v.** )   **C.A. No. N20C-10-135**
                                       )        **PRW CCLD**
BRUNSWICK CORPORATION, )
                                       )
                    **Defendant.** )

Submitted: March 28, 2022
Decided:  April 21, 2022

*Upon Plaintiffs' Notice of Exceptions to the Special Master's Action,*
**EXCEPTIONS DENIED**.

**<u>ORDER</u>**

Having fully considered Plaintiffs' Notice of Exceptions to the Special Master's February 27, 2022 Ruling and supporting brief (D.I. 153); the Defendant Brunswick's opposition thereto (D.I. 156); and the record in this matter; it appears to the Court that, for the reasons explained below, those Exceptions must be denied because they are procedurally improper:

(1)    In 2015, the parties entered into a Stock and Asset Purchase Agreement

(the "SAPA") with Plaintiffs as the buyers and Defendant Brunswick Corporation as the seller. In their Complaint, Plaintiffs allege Defendant intentionally failed to disclose material facts regarding a sales ban, recall, and fine issued by the Swedish Work Environmental Authority for one of Defendant's products. Plaintiffs seek indemnity for losses it allegedly incurred in connection with the sales ban, recall and fine, along with litigation costs and related expenses.

(2) On June 11, 2021, the Court entered an order of reference appointing William D. Johnston, Esquire, as Special Master for discovery matters.[1] Now before the Court is Plaintiffs' filing it styles a "Notice of Exceptions to the Special Master's February 27, 2022 Ruling."[2]

## I. FACTUAL AND PROCEDURAL BACKGROUND

(3) On April 12, 2021, Mr. Corey Dykstra, CEO of Plaintiff Brunswick Bowling Products, LLC ("BBP"), sent a letter to the law firm Baker McKenzie ("Baker").[3] He explained his understanding that Baker had represented Brunswick—then-known as Brunswick Bowling & Billiards Corporation ("BBB")—in various matters, including (a) BBB's sale pursuant to the SAPA in May 2015 and (b) "various matters arising from and related to an August 31, 2013

---

[1] D.I. 76.

[2] Pls.' Notice of Exceptions (D.I. 153).

[3] Defendant's Opp'n to Pls.' Exceptions, Ex. 1 (D.I. 156).

Notice received from the Swedish Work Environment Authority."[4]  Accordingly, he requested that Baker provide any documents in its possession "related to its representation of BBB" to Plaintiffs' counsel in the current litigation, Blank Rome.[5]

(4)    On April 29, 2021, Plaintiffs sent a subpoena *duces tecum* to Baker (the "Baker Subpoena").[6]  The Baker Subpoena requested a wide range of documents relating to Baker's prior representation of BBB.

(5)    On May 25, 2021, Defendant moved for a protective order "directing Plaintiffs and their counsel, Blank Rome LLP . . . to withdraw their pending request to Brunswick's former counsel, Baker McKenzie . . . for documents in Baker's possession from Baker's prior representations of Brunswick as well as barring Plaintiffs and their counsel from making any similar requests to Baker."[7]

(6)    On August 2, 2021, the Special Master issued a written decision resolving Defendant's Motion for a Protective Order, along with two other unrelated discovery motions (the "August 2 Order").[8]  After extended analysis, the Special Master concluded:

> Based upon the foregoing, I **DENY** Defendant's Motion for a Protective Order to the extent I find Plaintiffs entitled to seek documents in Baker's possession from Baker's prior representation of

---

[4] *Id.*

[5] *Id.*

[6] Pls.' Notice of Exceptions, Ex. 2.

[7] Defendant's Mot. for Protective Order at 1 (D.I. 61).

[8] August 2 Order (D.I. 87).

BBB in connection with the SWEA matter, and I **DENY** Defendant's request that I bar Plaintiffs and their counsel from making any similar requests to Baker. At the same time, I **GRANT** Defendant's Motion with regard to documents in Baker's possession from Baker's prior representation of Brunswick in connection with the SAPA transaction, and I **GRANT** Defendant's request that Plaintiffs and their counsel be barred from making any similar requests to Baker.[9]

(7)  On December 30, 2021, the Special Master issued a written decision resolving three unrelated discovery motions, including a Motion for a Protective Order filed by Plaintiffs.[10] In their opposition brief, Defendant argued that the Court lacked jurisdiction to hear Plaintiffs' motion and that the motion should have been filed in Tennessee state court.[11] The Special Master rejected Defendant's arguments; among other deficiencies, Defendant was "estopped from challenging the appropriateness of the forum when Defendant itself employed the same procedure in connection with issuance of service of the subpoena directed to Baker McKenzie."[12] In a footnote, the Special Master added:

Defendant argues that, because Brunswick's motion for a protective order in this Court was filed in response to an extra-judicial request that Baker McKenzie turn over its files to Blank Rome, not pursuant to the subpoena previously issued to Baker McKenzie, the filing of the motion for a protective order should have no bearing on the appropriateness (or not) of Plaintiffs having filed their motion in this Court rather than in Tennessee. But, as Plaintiffs point out, Brunswick did not file its

---

[9] *Id.* at 26.

[10] D.I. 133.

[11] *Id.* at 9.

[12] *Id.* at 14.

motion for a protective order until after Plaintiffs subpoenaed Baker McKenzie.[13]

(8)     In February 2022, the parties asked the Special Master to resolve another issue: "whether Plaintiffs should be barred from seeking, pursuant to a subpoena issued April 29, 2021, any documents in the possession of Baker McKenzie related to the SAPA transaction."[14]  The parties raised this issue through letters addressed to the Special Master, with neither party filing any formal motion.[15] The Special Master summarized the parties' contentions in an email dated February 27, 2022:

> [Defendant] says yes, based upon my Orders dated August 2, 2021 and December 30, 2021 as well as representations on the part of Plaintiffs leading to the latter ruling.  Plaintiffs say no, that the August ruling "pertains exclusively to the issue of privilege, i.e., whether Defendant could properly invoke privilege to withhold from production from Baker McKenzie (and itself) certain relevant documents arising from Brunswick's relationship with Baker McKenzie."  Thus, as Plaintiffs would have it, they should receive "(1) all non-privileged documents within Baker McKenzie's possession responsive to the Subpoena; and (2) a privilege log identifying those documents within Baker McKenzie's possession responsive to the Subpoena, but withheld as privileged. . . ."[16]

---

[13] *Id.* at 14 n.6.

[14] Pls.' Notice of Exceptions, Ex. 1.

[15] *Id.*, Exs. 4–6.

[16] *Id.*, Ex. 1.

(9)     After analyzing the parties' contentions, the Special Master concluded with the following "guidance:"

> For the avoidance of doubt, I have not previously addressed the enforceability of the subpoena directed to Baker McKenzie and I do not understand that issue to currently be before me by way of a motion or cross-motions;
>
> Were I to have the issue presented to me, my analysis and conclusions presumably would mirror those set forth in my August 2, 2021 letter ruling. Accordingly, I would find the subpoena unenforceable with regard to documents in connection with the SAPA transaction and any related obligation to log privileged documents in connection with that transaction.[17]

(10)   Plaintiffs filed their "Exceptions to the Special Master's February 27, 2022 Ruling" that same day. Plaintiffs say the Special Master ruled that: (1) the Baker Subpoena "was not previously presented to him for adjudication and did not factor into an August 2, 2021 decision he previously issued"; and (2) he "would find the Subpoena unenforceable" if it were presented to him for adjudication now.[18] Plaintiffs argue that "the Special Master erred in deciding the Subpoena's enforceability despite acknowledging that the Subpoena was not before him."[19] They go on—"the Ruling errantly predetermines an outcome with respect to the Subpoena based upon a rationale inapposite to the matter at hand."[20] Plaintiffs urge

---

[17] *Id.* (internal numbering omitted).

[18] Pls.' Notice of Exceptions at 1–2.

[19] *Id.* at 2.

[20] *Id.*

the Court should instantly find the Subpoena "enforceable to the extent not impacted by the 8/2/21 Decision (pertaining to privilege), and compel[ ] Baker McKenzie to promptly: (1) produce any nonprivileged documents within its possession responsive to the Subpoena; and (2) provide a log identifying any documents within its possession responsive to the Subpoena withheld as privileged."[21]

(11) Defendant opposes Plaintiffs' Exceptions. First, Defendant says Plaintiffs mischaracterize the Special Master's email to the extent Plaintiffs claim the email "affords no explanation why the Subpoena would be found unenforceable with regard to nonprivileged SAPA-related documents, nor why Baker McKenzie should be relieved of its obligation to provide a compliant privilege log . . . ."[22] Instead, Defendant suggests "the Special Master found for Defendant, and given that Defendant's argument was grounded in estoppel and the plain language of the August 2 Order, Plaintiffs' statement that the guidance 'affords no explanation' is inaccurate."[23] Defendant adds that the email was not a formal ruling, but rather "informal guidance" issued under the parties' stipulated procedures.[24] Defendant argues that Plaintiffs have effectively attempted to "skip formal motion practice before the Special Master" and that "[i]f the Court finds the February 27 Order

---

[21] *Id.*

[22] *Id.* at 6; *see also* Defendant's Opp'n to Pls.' Exceptions at 6–7.

[23] Defendant's Opp'n to Pls.' Exceptions at 7.

[24] *Id.*

lacking in detail, it should refer the issues back to the Special Master to provide further rationale for his ruling."[25]

(12)  Second, Defendant argues Plaintiffs' Exceptions should be denied because Plaintiffs are estopped from pursuing documents from Baker relating to the SAPA.[26]

## II.  STANDARD OF REVIEW

(13)  Ordinarily, a Special Master's Report is subject to *de novo* review by this Court.[27]  But the Court cannot employ such standard here because there just is no actual ruling or report by the Special Master to which Plaintiffs could take exception.

## III.  ANALYSIS

(14)  Defendant is correct that Plaintiffs have jumped the gun in filing their Exceptions.  In his email, the Special Master noted that he had not previously addressed the enforceability of the Baker Subpoena and "d[id] not understand that issue to currently be before [him] by way of a motion or cross-motions."[28]  He did advise, however, that if the issue *were* before him, his analysis and conclusion

---

[25] *Id.*

[26] *Id.* at 8.

[27] *Surf's Up Legacy Partners, LLC v. Virgin Fest, LLC*, 2021 WL 5049459, at *2 (Del. Super. Ct. Nov. 1, 2021) (citing DEL. SUPER. CT. CIV. R. 122(c)).

[28] Defendant's Opp'n to Pls.' Exceptions, Ex. 1.

"presumably would mirror those set forth in the August 2 letter ruling. Accordingly, [he] would find the subpoena unenforceable with regard to documents in connection with the SAPA transaction and any related obligation to log privileged documents in connection with that transaction."[29] The Special Master did not purport to provide a definitive ruling on the issue; instead, he made clear that he was merely providing "guidance."[30] It bears repeating that the Special Master sent his email in response to the parties' informal request for clarification. There wasn't even a motion for him to rule on.

(15) If Plaintiffs believe the Special Master's email was unclear, then they should ask the Special Master to clarify. And if Plaintiffs want an order compelling Baker to produce documents, then Plaintiffs should file an actual motion to that effect and argue it before the Special Master. When the Court entered its Order of Reference to Special Master, it made clear that the Special Master, *inter alia*, "shall have the duty and the power to resolve . . . all discovery motions filed by the parties or non-parties."[31] Plaintiffs have shown no reason why they should be allowed to short-circuit the Court's crafted process now.

---

[29] *Id.*

[30] *Id.*

[31] D.I. 76 at ¶ 2(a).

## IV.  CONCLUSION

(16)    Delaware courts have long "appreciate[d] the important assistance that masters provide" and recognized "that their [work and] decisions are [no] less thoughtful or worthy than those of a trial judge."[32]  Indeed, the aid special masters provide assists all litigants in the courts they serve by freeing trial judges to carry out the duties other judicial officers and adjuncts simply cannot.  The Court enlisted an additional adjudicative resource here to maximize—for these parties' benefit—the availability of expertise, responsiveness, and efficiency during the critical discovery stage of this case.  Plaintiffs' derogation of the discovery litigation process the Court put in place in an effort to jump the line and get back before the Court at a time of their choosing is dissipative.  Accordingly, the Plaintiffs' Exceptions are **DENIED** as procedurally improper.

**IT IS SO ORDERED**.

Paul R. Wallace, Judge

Original to Prothonotary

---

[32] *DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999).