**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

August 14, 2024

Kathleen DeLacy
Martin D. Page
Reger Rizzo & Darnall LLP
1521 Concord Pike, Suite 305
Wilmington, DE 19803

Jason C. Powell
Thomas J. Reichert
Laurel A. LaLone
The Powell Firm, LLC
1813 N. Franklin Street
Wilmington, DE 19802

Re: *Angela Okafor Carlisle v. Rone Everett*,
C.A. No. 2023-0077-LM

Dear Counsel:

This letter resolves the exceptions filed to Magistrate Mitchell's Final Report (the "Final Report") dated January 31, 2024.[1] For the reasons discussed below, the exceptions are granted, and I will preside over all further proceedings in this action.

## I. Factual And Procedural Background

This case concerns the Estate of Sharif Kihill Green, who died on June 18, 2022. Weeks prior to his death, on June 1, the Philadelphia Orphan's Court provided Green and Everett with a marriage license. The license authorized Green and Respondent Rone Everett to marry on or after June 4. The license also stated that it was "valid only in Pennsylvania."[2] On June 3, Everett was admitted to a hospital in

---

[1] *Carlisle v. Everett,* 2024 WL 368379 (Del. Ch. Jan. 31, 2024); *see also* C.A. No. 2022-0077-LM, Docket ("Dkt.") 34.

[2] Dkt. 39 ("Pet.'s Opening Br."), Ex. D (Marriage License).

New Jersey.[3]  He was incapacitated and confined to bed from June 3 until he died.[4]

The marriage certificate was executed on June 6 and witnessed by Everett's stepfather.[5]  The marriage certificate states that Green and Everett were married in Philadelphia.[6]

Everett opened Green's estate as Green's wife with the Delaware Register of Wills on August 26, 2022, and was appointed the estate's personal representative.[7]

Green's mother, Petitioner Angela Carlisle, does not recognize Green's marriage to Everett and wishes to serve as personal representative of Green's estate. On December 14, 2022, Carlisle filed a letter with the Register of Wills contesting Everett's appointment.[8]  She claimed that Everett's marriage to Green was impossible due to his location on the date of their marriage.[9]  The same day, the Chief Deputy of the Register of Wills contacted several persons to investigate Carlisle's claims, including the Philadelphia County Clerk of the Orphans' Court, Tiffany Gordon.[10]  Gordon confirmed on December 15 that the Orphans' Court had the actual marriage certificate on file.

---

[3]  Dkt. 1 ("Pet. for Removal") ¶ 7.

[4] *Id.* ¶ 8.

[5] Pet.'s Opening Br., Ex. E (Marriage Certificate).

[6] *Id.*

[7] Dkt. 30, Ex. F.

[8] New Castle County Register of Wills Case No. ROW 181736 Dkt. ("ROW Dkt.") 5.

[9] *Id.*

[10] ROW Dkts. 6–8; Pet.'s Opening Br., Ex. I.

The Clerk of the Orphans' Court Division further responded by a letter dated December 22, received on December 28, and uploaded to the docket on January 3, 2023. The letter stated:

> A Marriage Licensing application as completed and approved by our office for [Green and Everett] on June 1, 2022, during a Zoom meeting. The applicants indicated that Mr. Green was hospitalized at the time and provided proper documentation for the Marriage License Clerk to conduct a Zoom Sick Call.
>
> Proper documentation would have included a completed application and a Doctor's Note from the attending physician indicating the hospitalized applicant is of sound mind and body to make their own decision and has a diagnosis of a terminal illness. The Doctor's Note must be on the physician's letterhead and signed by the physician.
>
> We are searching for our paper file on this matter so that we may confirm the exact documentation that was provided.[11]

A Philadelphia Assistant Solicitor confirmed by email, a week later, that the Orphans' Court received the fully executed marriage certificate.[12]

Carlisle filed this action to remove Everett as personal representative on January 24, 2023, alleging that the marriage was fraudulent because Green was hospitalized in New Jersey on the day of the marriage ceremony and thus could not have married Everett in Philadelphia, as the certificate stated.[13]

---

[11] ROW Dkt. 11.

[12] ROW Dkt. 12.

[13] Pet. for Removal ¶ 10.

Everett moved to dismiss the petition, and the Magistrate Judge heard argument on October 2, 2023. During argument, the parties requested leave to submit supplemental briefing on an issue raised by the Magistrate concerning the implications of the Full Faith and Credit Clause on the court's subject matter jurisdiction.[14] Supplemental briefing concluded on November 20.

## II. Legal Analysis

In her Final Report dated January 31, 2024, the Magistrate Judge recommended that the motion to dismiss under Court of Chancery Rule 12(b)(1) be granted for lack of subject matter jurisdiction.[15] Carlisle filed exceptions, which the parties argued on May 17.[16]

This court applies *de novo* review to the factual and legal findings of a Magistrate.[17] The narrow question presented on exceptions is whether this court lacks subject matter jurisdiction over the action to remove Everett as a personal representative of the estate.[18]

This court acquires subject matter jurisdiction "in only three ways: (1) the invocation of an equitable right; (2) the request for an equitable remedy when there is no adequate remedy at law; or (3) a statutory delegation of subject matter

---

[14] Dkt. 38 at 45.

[15] Dkt. 34.

[16] Dkt. 44.

[17] *DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999).

[18] Pet.'s Opening Br. at 7–13; *see* Dkt. 41("Resp.'s Answering Br.") at 14–17.

jurisdiction."[19]   At base, Petitioner seeks the removal of a representative of an estate.[20]  This relief is equitable in nature and is thus within the court's equitable jurisdiction.[21]  This court therefore has subject matter jurisdiction.  The exceptions are sustained.

This conclusion, however, stops far short of resolving the thorny issues raised by the parties.  Magistrate Judge Mitchell was rightly concerned that Carlisle's petition sought to collaterally attack Green's marriage to Everett.  Although she framed this as a question of subject matter jurisdiction under Rule 12(b)(1), I view it as an issue of standing under Rule 12(b)(6).  That is, the question, to my mind, is whether Carlisle has standing to challenge Green's marriage to Everett in this court or elsewhere on the basis of fraud.  The parties did not directly address this issue, and they are granted leave to do so.  They may also raise any other legal argument that has been preserved or that is prompted by the reframing of the issue.

---

[19] *Quarum v. Mitchell Int'l, Inc.*, 2019 WL 158153, at *2 (Del. Ch. Jan. 10, 2019) (quoting *Hillsboro Energy, LLC v. Secure Energy, Inc.*, 2008 WL 4561227, at *1 (Del. Ch. Oct. 3, 2008)).

[20] Pet.'s Opening Br. at 14–15.

[21] *Matter of Est. of Gusoff*, 2024 WL 1903744, at *3 (Del. Ch. Apr. 30, 2024) (removing an estate representative under this court's "equitable power"); *Nelson v. Russo*, 844 A.2d 301, 303 (Del. 2004) (commenting that "[t]he only way a court could order removal . . . would be through mandatory injunction"); *see also Davis v. Browne*, 1859 WL 2010, at *1–2 (Del. Ch. Feb. 1, 1859) (noting that removal of a trustee requires an injunction); Ct. Ch. R. 207 (stating that the court has subject matter jurisdiction over "petitions for review of proof of will, petitions for partition, caveats against allowance of instrument as will, *petitions for removal of personal representatives, and other similar petitions* concerning the estates of decedents that require judicial action by the Court of Chancery" (emphasis added)).

There are strong competing arguments that point in opposite directions. On the one hand, 13 *Del. C.* § 1506 (which governs efforts to challenge Green's marriage to Everett)[22] grants very few persons who are not parties to a marriage standing to challenge its validity "after the death of either party to the marriage" for estate administration purposes or otherwise.[23] Everett does not fall into any of the categories of persons recognized by this statute. One might argue that the express inclusion of a list of persons with standing to challenge a marriage for estate administration purposes, along with the exclusion of parents of the deceased from that list, means that the General Assembly did not intend to allow parents of a deceased person to challenge the decedent's marriage for estate administration purposes.

On the other hand, "the public policy against fraud is a strong and venerable one that is largely founded on the societal consensus that lying is wrong."[24] Carlisle claims that Everett fraudulently secured the marriage so as to foreclose Carlisle from

---

[22] The parties married in Pennsylvania, but Delaware law governs efforts to annul that marriage because Green and Everett lived in Delaware. *See* 23 Pa. Stat. and Cons. Stat. Ann. § 3104(b); 13 *Del. C.* § 1504(a).

[23] *See* 13 *Del. C.* § 1506(b)(4) ("A decree of annulment for the reason set forth in paragraph (a)(7) of this section may be sought by either party, by the legal spouse in case of bigamous, polygamous or incestuous marriages, by the appropriate state official, or by a child of either party at any time prior to the death of either party or prior to the final settlement of the estate of either party and the discharge of the personal representative, executor or administrator of the estate, or prior to 6 months after an order of distribution is made under Chapter 23 of Title 12.").

[24] *Abry P'rs V, L.P. v. F & W Acq. LLC*, 891 A.2d 1032, 1035 (Del. Ch. 2006).

administering her son's estate. The question is whether Delaware law impliedly grants Carlisle standing to pursue that cause of action.[25]

The parties are ordered to confer to determine whether they can agree on an orderly way to take this action to its conclusion, including by addressing the standing issue I have raised in this letter. If agreement is reached, the parties are ordered to submit a form of scheduling order for my review. If not, the parties are ordered to submit competing scheduling orders and schedule a telephonic hearing to resolve the issue.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Chancellor

cc:     All counsel of record (by *File & ServeXpress*)

---

[25] As a second basis for recommending dismissal, the Magistrate Judge concluded that the Orphans' Court's letters prompted by the Register in Chancery's investigation deserved respect under the Full Faith and Credit Clause. To this, Carlisle responds that the marriage certificate is not entitled to deference if it was procured by fraud as Carlisle alleges. The Magistrate Judge further reasoned that Carlisle had not adequately alleged fraud with particularity as required by Court of Chancery Rule 9. The Magistrate Judge made excellent points, but I read the record and the rule slightly differently and believe that Carlisle met the heightened pleading standard in this action.