Michael F. DiGIACOBBE, Plaintiff
Below, Appellant,

v.

Joseph P. SESTAK, Defendant
Below, Appellee.

No. 450,1998.

Supreme Court of Delaware.

Submitted: Sept. 14, 1999.
Decided: Dec. 17, 1999.

Laraine A. Ryan, Hockessin, Delaware, for Appellant.

Robert C. McDonald, and Barbara J. Gadbois (argued), of Borin & McDonald, Wilmington, Delaware, for Appellee.

A. Gilchrist Sparks, III (argued), and Stephanie L. Nagel, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, Amicus Curiae for Appellant.

Grover C. Brown (argued), of Morris, James, Hitchens & Williams, Wilmington, Delaware, Amicus Curiae for Appellee.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT, and BERGER, JJ., constituting the Court en Banc.

PER CURIAM:

In this appeal, we consider the role of a master in the Court of Chancery and the scope of review of a master's final report. We hold that the judges in the Court of Chancery have both inherent and statutory power to refer any matter within the court's jurisdiction to a master. They may delegate to a master full authority to address all issues in controversy from the outset of the case through post-trial submissions. The master is not a judge, however, so the master's rulings and report are not final until they have been reviewed and adopted by a judge. Timely objections to the master's findings and conclusions must be reviewed *de novo* by the judge and, for a review of the evidence to be meaningful, there must be a transcript of the proceedings before the master. In this case, the trial judge could not undertake such a review because there was no transcript. Accordingly, we must vacate the decision of the Court of Chancery and remand for further consideration of the master's report after the record has been transcribed.

I. Factual and Procedural Background

This is an action by one of the two stockholders of a home construction company seeking an accounting, damages, and the appointment of a custodian to wind up the company's affairs. Michael F. DiGiacobbe and Joseph P. Sestak each own 50% of the stock of Chesapeake Construction, Ltd. Before they parted ways, DiGiacobbe primarily worked in the field and Sestak handled the bookkeeping and finances. DiGiacobbe sued Sestak and Chesapeake, claiming that Sestak misappropriated company funds, failed to pay company debts, and damaged Chesapeake's good will and ability to conduct its business.

In June 1997, approximately two years after the complaint was filed, the Court of Chancery entered the following order referring the case to a master:

> Richard C. Kiger, Esquire, is appointed as a Master with respect to the captioned matter for purposes of hearing and determining the complaint and, pursuant to the Rules of this Court, submitting a report to the Court finding the relevant facts, addressing the merits of the contentions advanced by each party hereto and recommending a form of order appropriate to be entered in the matter.

The Master conducted a three day trial and later issued draft and final reports evaluating the evidence, explaining certain evidentiary rulings, and recommending that the complaint be dismissed in almost all respects. The Master had to rely on his notes and his memory in reaching his conclusions, as no one had ordered a transcript of the trial. DiGiacobbe filed exceptions to both reports and objected to the Master's evidentiary rulings. The Court of Chancery considered the matter, with-

out the benefit of a transcript, and decided to accept the Master's report.

On appeal DiGiacobbe complains, among other things, that the trial court's cursory review of the Master's report amounted to an improper delegation of full judicial authority to the Master. This Court appointed *amicus curiae* to address the important issue of a master's authority and the scope of review of a master's decision. Following a long tradition of the Delaware Bar, the *amici*—A. Gilchrist Sparks, III, Esquire, and Grover C. Brown, Esquire—prepared excellent briefs and arguments that were most helpful to the Court. We greatly appreciate their efforts.[1]

## II. Discussion

The Vice Chancellor's order of reference instructed the Master to hear and determine all of the parties' claims, make findings of fact and conclusions of law, and recommend an appropriate disposition for the case. This broad delegation of responsibility raises two questions—does a judge on the Court of Chancery have authority to refer an entire case to a master; and, if so, what level of review is required before the judge may adopt the master's report?

### A. Authority to Refer Case to Master

■ There can be no doubt about the Court of Chancery's general authority to appoint masters. Delaware's equity court traces its jurisdiction and powers to the High Court of Chancery in Great Britain at the time of the American Revolution.[2] Under English chancery court practice, even before the Revolution, masters were appointed by the court and given authority to examine witnesses and prepare reports of their findings in the cause referred to them.[3] In addition to its inherent authority, the Court of Chancery has express statutory power to refer matters to masters. The Court may appoint a master in any pending case and it may promulgate rules governing the master's duties and "regulating the practice in all particulars...."[4] Court of Chancery Rules 135—147 detail the powers and duties of the master as well as the procedures governing the presentation of evidence and the manner in which the parties may object to the master's report.

Although it is clear that the Court may appoint masters, the permissible scope of the master's assignment is not expressly defined. We do not rely on early English practice for the answer, as there appears to be a divergence of views.[5] Rather, we look to the plain language of the statute that codifies the Court's inherent power—§ 372. The statute authorizes the Court of Chancery to appoint a master "in any cause...."[6] Since there is no express or implied limitation on the scope of the appointment, we assume that the legislature intended none.[7] Accordingly, we conclude that a judge of the Court of Chancery may appoint a master to hear and evaluate all of the claims presented in an entire case unless otherwise provided by statute or rule of court.

### B. Review of Master's Report

■ There is no limitation on the range of matters a master may consider; the limitation is on the master's power to decide those matters. The Delaware Con-

---

1. We also note with appreciation the assistance that Stephanie L. Nagel, Esq. provided on the briefs submitted by Mr. Sparks.

2. *Glanding v. Industrial Trust Co.*, Del.Supr., 45 A.2d 553, 555 (1945).

3. Lord Nottingham's 'Manual of Chancery Practice' and 'Prolegomena of Chancery and Equity' 123–25 (D.E.C.Yale, ed., Cambridge Univ. Press 1965).

4. 10 *Del. C.* § 372.

5. *See, e.g.* James R. Bryant, *The Office of Master in Chancery: Early English Development*, 40 A.B.A. J. 498, 500–01 (1954) (discussing debate between early 18th century English authors over role of master.).

6. 10 *Del. C.* § 372.

7. *See Sostre v. Swift*, Del.Supr., 603 A.2d 809, 813 (1992).

stitution restricts the exercise of judicial authority to those who are appointed by the Governor and confirmed by the Senate.[8] Since masters in the Court of Chancery are appointed by the Chancellor, they may not exercise judicial authority:

> Simply stated, a master has no independent power of adjudication. In this respect a master's authority is comparable to that of a court-appointed referee whose limited role has been authoritatively described:
>
> > Without confirmation and adoption by the court, the acts of the referee have no force or validity whatever, and nothing can originate before him and nothing can terminate with or by his decision, the entire proceeding being an exercise of judicial power by the court.[9]

In short, the master's rulings, findings of fact, conclusions of law, and recommended disposition have no effect until they are adopted by a judge after a "meaningful review." [10]

The Court of Chancery Rules relating to masters recognize the limitations on a master's authority and the consequent requirement of meaningful judicial review. Rule 136, for example, enumerates the master's wide range of powers, including the power to administer oaths, summon witnesses, require the production of documents, and "generally to do all other acts... which may be deemed necessary and proper, *subject at all times to the revision and control of the Court.*" [11] With respect to evidentiary rulings, Rule 139 authorizes the master to decide the admissibility of evidence and competence of witnesses, but allows a party aggrieved by the master's ruling to present his or her objection to a judge before the master makes a report on the proceedings. Most importantly, Rule 144 allows the parties to object to the master's report and provides for judicial review before the report is adopted:

> As soon as the Master is ready to file a report, the Master shall ... submit a draft thereof to each party for its inspection and any party may except thereto in writing within the time set therefor by the Master. Such exceptions shall first be heard by the Master who shall be at liberty to amend the draft report. A final report shall then be filed by the Master consisting of the draft report as amended.
>
> The only exceptions which may be filed to the final report are those exceptions which were filed to the draft report and disallowed, plus exceptions to any change from the draft report made in the final report.
>
> . . . .
>
> In all instances in which the Master's report is based upon testimony taken on the record before the Master, proceedings on any exception filed to the final report shall be on such record, unless for good cause shown the Court elects to take additional testimony. If no exceptions are filed to the final report, the Court may thereafter confirm such report on its own motion or may set the matter down for further proceeding in its discretion.[12]

Although the Court of Chancery Rules are helpful in defining the role of the master, they do not identify the standard by which the master's rulings and report should be reviewed. In recent decisions, the Court of Chancery seems to have settled on the following articulation of its standard of review:

---

**8.** Del. Const. art. IV, §§ 1,3. *See also State v. Wilson,* Del.Supr., 545 A.2d 1178, 1184 (1988).

**9.** *State v. Wilson,* 545 A.2d at 1184 (citations omitted).

**10.** *Redden v. McGill,* Del.Supr., 549 A.2d 695, 698 (1988).

**11.** Ct. Ch. R. 136 (emphasis added).

**12.** Ct. Ch. R. 144.

In reviewing a report of the Master in Chancery, this Court employs a *de novo* standard in reviewing questions of law. The Master's factual findings are, however, entitled to a certain degree of deference. Where such findings are supported by the record and are the product of an orderly and logical deductive process, this Court will accept them, even if the Court may independently have reached the opposite conclusion.[13]

This is the standard of review applied by the Supreme Court in reviewing decisions of a trial judge sitting without a jury,[14] and it accords deference to the factual findings of another judge as a matter of respect and judicial restraint. Masters are not judges and their different status requires a slightly different level of review.

■ We appreciate the important assistance that masters provide and we do not mean to suggest that their decisions are less thoughtful or worthy than those of a trial judge. But masters are constitutionally prohibited from exercising judicial power. If their factual findings were accepted "even if the Court may independently have reached the opposite conclusion," then masters would be exercising judicial power. To avoid that result, we conclude that the standard of review for a master's findings—both factual and legal— is *de novo*.

■ As a practical matter, this holding may not significantly change master practice. *De novo* review generally means a new trial or hearing on questions of fact. That may be required in some cases. It is possible, however, to conduct a review *de novo* on the record.[15] If the parties do not except to any of the master's factual findings, they are deemed to have consented, and the trial judge may review the record *de novo* accepting the master's facts in the same way that the judge would resolve a dispute presented on a stipulated set of facts. Even where the parties except to one or more of the master's factual findings, a new hearing may not be required. If the parties object to the conclusions that the master drew from the evidence, the court may read the portion of the record relevant to the exception raised and draw its own factual conclusions. Only where exceptions raise a *bona fide* issue as to dispositive credibility determinations will a new hearing be inevitable. In those cases the new hearing can be limited to the witness or witnesses whose credibility is at issue.

■ In this case, we do not know whether the trial court will have to conduct a new hearing as part of its *de novo* review because no transcript of the proceedings before the master was prepared. Chancery Court Rule 138 requires that the oral testimony before a master be taken by a stenographer and "reproduce[d] in manuscript, or typewriting...."[16] It appears that the proceedings were recorded but not transcribed because no one paid the costs of transcription. The Rules do not state which party must bear that cost, and we urge the Court of Chancery to address this omission promptly. In the interest of justice, in this case only, we instruct the Court of Chancery to order the necessary transcript at its own expense.

**13.** *In the Matter of the Estate of McNatt,* Del. Ch., No. 110805, 1999 WL 135240, at *2 (Feb. 25, 1999) (citations omitted).

**14.** *Levitt v. Bouvier,* Del.Supr., 287 A.2d 671, 673 (1972)

**15.** *In the Matter of the Last Will of Collins,* Del.Supr., 251 A.2d 345, 346–47 (1969).

**16.** Ct. Ch. R. 138.

### III. Conclusion

Without a transcript of the proceedings before the master, we are unable to review the decision of the Court of Chancery. The trial court, likewise, was unable to review the decision of the master. Accordingly, we remand this matter to the Court of Chancery for further action in accordance with this opinion.