**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: July 20, 2015
Date Decided: September 14, 2015

Michael R. Smith, Esquire
The Smith Firm, LLC
8866 Riverside Drive
P.O. Box 1587
Seaford, Delaware 19973

Neilson C. Himelein, Esquire
Community Legal Aid Society, Inc.
100 W. 10th Street, Suite 801
Wilmington, Delaware 19801

William E. Manning, Esquire
Richard A. Forsten, Esquire
Allison J. McCowan, Esquire
Saul Ewing LLP
222 Delaware Avenue, Suite 1200
Wilmington, Delaware 19801

Kathaleen St. J. McCormick, Esquire
Elisabeth S. Bradley, Esquire
Matthew C. Bloom, Esquire
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801

Re: *Henlopen Landing Homeowners Ass'n v. Vester*,
Civil Action No. 7229-MA

Dear Counsel:

This Letter Opinion involves exceptions to the Final Report of Master Ayvazian granting the Respondents' Motion to Amend, issued February 25, 2015. The matter was partially resolved by me from the bench on June 5, 2015; the following represents my decision on the remainder of the issues presented on exception.[1]

---

[1] This Letter Opinion supplements, and does not supersede or replace, my bench rulings of June 5, 2015.

In November 2011, JaKara Vester filed a housing discrimination complaint with the Delaware Division of Human Relations (the "DDHS Action") alleging discrimination based on race, disability, and familial status in connection with the Henlopen Landing Homeowners Association's ("HOA") refusal to approve certain requested accommodations.[2] Ms. Vester also alleged in the DDHS Action that the HOA engaged in conduct that intimidated or coerced her, or interfered with her rights under the Federal and State Fair Housing Acts (together, the "Fair Housing Acts"). In a February 2012 petition in this Court, the HOA requested relief pursuant to 10 *Del. C.* § 348 to enforce deed restrictions against Ms. Vester and her husband, Russell H. Vester (the "348 Action"), relating to, among other things, an allegedly improper extension of their driveway.[3] The Vesters removed the 348 Action to the federal district court, and alleged via counterclaim, among other claims, that the 348 Action itself was an attempt to coerce, intimidate, and threaten the Vesters, and interfere with their exercise of rights granted or protected by the Fair Housing Acts as alleged in the DDHS Action. These particular counterclaim

---

[2] Ms. Vester sought approval for, as relevant here, (1) installation of a six-foot high fence, citing one of her children's disability as the reason, which height was approved, (2) widening the existing driveway, and (3) extending the location of the fence closer to the front of the lot than was otherwise permitted. There is a dispute as to whether Ms. Vester noted her son's disability as the reason for the request to extend the fence toward the front of the lot, or whether she indicated that it was related to the family's dog. The driveway extension and fence extension were denied, and when the Vesters expanded their driveway nonetheless, the HOA suspended the family's pool privileges due to alleged violations of the restrictions.

[3] The petition also alleged violations for plantings in the area between a neighborhood road and sidewalk, as well as improper placement of garbage receptacles.

allegations (the "Retaliation Counterclaims) are at issue in this Letter Opinion.

In May 2013, the district court remanded the 348 Action to this Court. Master Ayvazian appointed a mediator, pursuant to the mandatory mediation provisions in Section 348. The mediation was unsuccessful, and the parties proceeded to litigate before the Master. On February 27, 2014, the Vesters filed a Motion for Joinder and a Motion to Amend Their Answer, Defenses and Counterclaims to add additional parties (the "Motion to Amend").[4] The Motion to Amend sought to add Preston Dyer, the president of the HOA's board of directors, and Premier Property and Pool Management, LLC ("PPPM"), the HOA's management company, to the Vesters' counterclaims.

Following briefing and argument, the Master issued a draft report, recommending granting the Motion to Amend and adding Dyer as a party defendant to Counts II, III, V, and VI of the counterclaims, and adding PPPM as an additional party defendant to Counts I and IV of the counterclaims. The Petitioner took exceptions, and following briefing and argument, the Master issued her Final Report, which again recommended granting the Motion to Amend. The Petitioner has taken exceptions to the Final Report.

Dyer and PPPM requested the opportunity to submit briefing on the

---

[4] The parties submitted a stipulated scheduling order, which the Master entered on December 3, 2013, allowing for joinder of other parties and amendments to the pleadings to be made by February 28, 2014.

Petitioner's exceptions, which I allowed. I heard oral argument on the exceptions on June 5, 2015, partially resolving the matter from the bench with respect to Dyer, and denying PPPM's exception to the Master's report. I requested additional briefing on the language in 42 *U.S.C.* § 3613(a)(1)(A) and 6 *Del. C.* § 4613 to aid in my determination as to whether an amendment adding Dyer as a party to the Retaliation Counterclaims would be futile in light of the statutory limitations period under the Fair Housing Acts. In light of the record and the supplemental briefing, I conclude that such an amendment would be futile.

*A. Standard of Review*

The findings of fact and law in Masters' Reports are reviewed by this Court *de novo*.[5]

*B. The Amendment Adding Dyer to the Retaliation Counterclaims Would be Futile*

Rule 15(a) provides that leave to amend should be "freely given when justice so requires."[6] "Amendments to the pleadings typically are permitted unless (1) the amendment would result in undue prejudice or undue delay, (2) the amendment would be futile, or (3) the party seeking leave to amend is acting in bad faith or in an effort to delay the proceedings."[7]

---

[5] *DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999).
[6] Ct. Ch. R. 15(a).
[7] *Saitis v. Malatesta*, 2013 WL 2015546, at *1 (Del. Ch. May 13, 2013).

Dyer opposes the amendment to add him to the Retaliation Counterclaims on the ground that it would be futile as time-barred under the two-year limitations period in the Federal and State Fair Housing Authority Acts.  He points out that the last discriminatory act alleged in the proposed Retaliation Counterclaims occurred on February 7, 2012, when the 348 Action was filed, or, at the latest, on February 14, when the Vesters' counsel received a copy of the complaint in that action, which receipt counsel confirmed the following day.  The Vesters were formally served with the complaint on February 27, 2012 and the Motion to Amend was filed on February 27, 2014.

Both the Federal and State Fair Housing Acts impose a two-year limitation period by statute: in the Federal Act running from the later of the "occurrence *or termination*" of the wrong; in the State Act after the later of the occurrence, termination or actual or reasonable discovery thereof.[8]  I found from the bench that receipt of the complaint by the Vesters' attorney represented the date from which the Vesters should have discovered the allegedly retaliatory 348 Action.[9]  Thus,

---

[8] 42 U.S.C. § 3613(a)(1)(A) (emphasis added); 6 Del. C. § 4613(a)(1)a.

[9] The Vesters argued that, under the State Fair Housing Act, the statute begins to run from the date the discriminatory practice has been discovered or should have been discovered, which, in this instance, they suggested to be the date the 348 Action petition was served on them— February 27, 2012, exactly two years prior to the Motion to Amend.  However, the record reflects that their counsel was served prior to that date, on February 14, 2012, which he acknowledged on February 15.  I ruled from the bench that the date he was made aware of the 348 Action was the latest possible date it could be said that the discriminatory act was discovered or should have been discovered by the Vesters, thus leaving only the question of whether the discriminatory practice is ongoing in light of the fact that the 348 Action is still pending.

assuming the Vesters' retaliation cause of action accrued with the occurrence of, or their discovery of the occurrence of, that complaint, the allegations regarding the 348 Action they attempt to plead against Dyer in the Retaliation Counterclaims are time-barred. The Vesters, however, point out that the limitations period runs from the latter of the "occurrence or *termination*" of the wrong, and argue that, in light of the continued pendency of the 348 Action, the wrong represented by the filing of that action has not yet "terminated." In other words, according to the Vesters, the limitation period *has not yet begun to run.* This Letter Opinion addresses that issue: whether the continued maintenance of the Section 348 Action is an "unterminated" violation of the State and Federal Fair Housing Acts, such that the two-year limitations period has not yet expired.

Under 42 U.S.C. § 3613(a)(1)(A), private enforcement claims under the Fair Housing Act must be filed "not later than two years after the occurrence or termination of an alleged discriminatory housing practice . . . whichever occurs last."[10] Delaware's fair housing law similarly provides that, as relevant here, a civil action must be commenced "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice."[11]

---

[10] 42 U.S.C. § 3613(a)(1)(A).

[11] 6 *Del. C.* § 4613(a)(1)a reads, in pertinent part:

> An aggrieved person may commence a civil action . . . not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, [or] not later than 2 years after such practice has been discovered or reasonably

The Vesters assert that the amendment would not be futile because the filing of the § 348 Action was a discriminatory practice, and, since the action remains pending, that discriminatory practice has not yet "terminated." Under this theory, the statute of limitations would not begin to run until a final disposition of this case.

The parties agree that the "or termination" limitation trigger was added to the Federal Fair Housing Act (and presumably, to the State Act) in response to the United States Supreme Court's decision in *Havens Realty Corp. v. Coleman*,[12] which allowed otherwise untimely claims to proceed under the "continuing violations doctrine." *Havens* focused on a "continuing pattern, practice, and policy of unlawful racial steering," which was based "not solely on isolated incidents . . . , but [involved] a continuing violation manifested in a number of incidents."[13] Under *Havens*, for purposes of the statute of limitations, a continuing violation "should be treated differently from one discrete act of discrimination. Statutes of limitations . . . are intended to keep stale claims out of courts. Where the challenged violation is a continuing one, the staleness concern disappears."[14]

---

should have been discovered by the aggrieved person . . . whichever occurs last . . . .

As described above, with the respect to the Retaliation Counterclaims the "alleged discriminatory action"—the filing of the 348 action—was or should have been discovered more than two years prior to the Vesters' Motion to Amend.

[12] 455 U.S. 363 (1982).

[13] *Id.* at 381.

[14] *Id*. at 380.

7

The filing of a lawsuit—at least as alleged here—does not fit within that rationale; it is not a pattern of multiple incidents that, like racial steering, continues over time. The Vesters concede that "the alleged discriminatory behavior . . . [was] the *commencement* of this action . . . ."[15] The commencement of the 348 Action, if it was retaliatory, was a discrete act that was completed upon filing, and discovered upon service to the Vesters' counsel. This is demonstrated by the fact that the *original* "Answer, Defenses and Counterclaims"—filed by the Vesters in 2013—alleged that this action was "motivated by discriminatory animus" and was actionable under the Fair Housing Acts.[16] Thus, I do not find that the existence of the 348 Action represents a continuing violation.

The Vesters point to a number of design and construction cases where courts have apparently applied the continuing violations doctrine in different ways, some concluding that completion of one building is a single occurrence with others concluding that there is a continuing violation while multiple buildings are constructed. The Vesters note that "all [of these cases] appear to apply the termination of the discriminatory behavior, e.g. date construction completed, date last certificate of occupancy was issued and date last non-compliant building was

---

[15] Respondents' Supplemental Reply Letter, July 20, 2015, at 4 (emphasis added); *see* Respondents' Amended Answer, Defenses and Counterclaims, at 17 (alleging that Dyer's "actions . . . in commencing this action" violated that Fair Housing Acts).

[16] "Answer, Defenses and Counterclaims," at 5, 15–16. As Dyer and PPPM point out, the Vesters raised the Retaliation Counterclaims as early as their March 14, 2012 Notice of Removal to the United States District Court.

constructed, as the trigger for the statute of limitations."[17]  Here, they contend, "[w]hether the retaliation is *a single act of discriminatory behavior* or a continuing violation, the termination of the discriminatory behavior, the lawsuit against Respondents, is what triggers the statute of limitations."[18]  That conclusion is not warranted from the rationale of the construction cases, which involve the design and construction of buildings non-compliant with a provision in the Fair Housing Acts requiring that access for disabled individuals be provided.  In each case,[19] the court focuses on the occurrence of the design and construction; whether that occurrence happens upon the completion of construction of one building or, under a continuing violation theory, the termination of a multi-building project, the occurrence takes place, and the limitation period accrues, when construction is completed and the project ready for occupancy, not, by analogy to the Vesters' argument here, when the discriminatory feature is remedied.  Moreover, the Vesters' position is inconsistent with the notion of a continuing practice.  It is not clear to me how "a single act of discriminatory behavior" could have a "termination" separate from the "single act"; either an act of discrimination is a discrete act, initiated and completed (an "occurrence"), or it is a pattern of

---

[17] Respondents' Supplemental Reply Letter, July 20, 2015, at 4 (citing *Garcia v. Brockway*, 526 F.3d 456 (9th Cir. 2008) (*on rehearing en banc*); *Equal Rights Ctr. v. AvalonBay Communities, Inc.*¸ 2009 WL 1153397 (S.D. Md. Mar. 23, 2009); *Kuchmas v. Towson Univ.*, 2007 WL 2694186 (D. Md. Sept. 10, 2007); *Moseke v. Miller and Smith, Inc.*, 202 F.Supp.2d 492 (E.D. V. 2002)).

[18] *Id.* (emphasis added).

[19] *See* n. 17 and the cases cited therein.

discriminatory behavior (a "continuing violation"), the "termination" of which would start the clock on the statutory period. The Vesters' construction would read the "occurrence" accrual trigger out of the statutory language. I note also that application of the Vesters' construction of the statute would mean that a cause of action arising from the alleged filing of a lawsuit for a discriminatory purpose would potentially be viable for many years: the two-year statutory period tacked on to a multi-year litigation of the underlying action. Such a result invites the very problems and injustices—involving proof and defense of stale tort claims based upon frail and fading human memories—that a two-year limitation period is designed to prevent.[20]

To recapitulate, the 348 Action is not a "continuing violation," such that its termination will begin the statutory period. A "continuing violation is occasioned by continual unlawful *acts*, not by continual ill effects from an original violation."[21] Here, no wrongful act or practice has occurred within the limitation period, the sine qua non of a continuing violation.[22] The Vesters do not allege that the litigation, whatever its motivation, has been maliciously maintained or vexatiously prosecuted, and if they did, separate remedies for such behavior would be available. Rather, they agree that the retaliatory act, if any, was the

---

[20] *See Havens*, 455 U.S. at 380 (noting that staleness of claims is of lesser concern in cases where ongoing violations are occurring).
[21] *Garcia*, 526 F.3d at 462 (emphasis added).
[22] *Moseke,* 202 F.Supp.2d at 504–05.

10

commencement—the filing—of the suit. For purposes of the Federal Fair Housing Act, the statute of limitations began to run from the occurrence of that filing, February 7, 2012. The retaliatory act was discovered no later than when the Vesters' counsel acknowledged receipt of the complaint on February 15; for purposes, then, of the State Fair Housing Act, the statute of limitations began to run no later than February 15, 2012. The Retaliation Counterclaims against Dyer are time-barred, and the amendment would be futile. Accordingly, the Motion to Amend, as it relates to the Retaliation Counterclaims against Dyer, is denied.

The matter is remanded to the Master for further proceedings. To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III