# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ELMER YU, TRUSTEE OF THE ELMER YU REVOCABLE TRUST U/A/D 8/11/2021, WILMA YU, TRUSTEE OF THE WILMA YU REVOCABLE TRUST U/A/D 08/11/2021, AND CHRISTINE WELCH, Individually, | ) ) ) ) ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | C.A. No. 2022-0014-SEM (MTZ) |
| JAMES CAHILL AND ELAINE CAHILL, | ) ) ) ) | |
| Respondents. | ) | |

## ORDER REGARDING EXCEPTIONS

**WHEREAS:[1]**

A.     Petitioners Elmer Yu, Wilma Yu, and Christine Welch (together, "Petitioners") seek to enforce neighborhood deed restrictions against respondents James Cahill and Elaine Cahill in connection with the Cahills' six-foot closed privacy fence.[2] The parties all reside on Boulder Brook Drive in Wilmington,

---

[1] Citations in the form "Report" refer to the Magistrate's Final Report available at docket item ("D.I.") 66. Where the facts are undisputed, I have cited the Report for expediency. Citations in the form "ROB" refer to Respondents James Cahill and Elaine Cahill's Opening Brief, available at D.I. 81. Citations in the form "PAB" refer to Petitioners' Answering Brief, available at D.I. 82.

[2] *See* Report 2–3.

1

Delaware.[3]  Boulder Brook's deed restrictions bar any fence absent prior approval of one-third of the development's residents (including all adjacent neighbors), and even then limit fences to an "open" style and a maximum height of four feet.[4]  The Cahills erected a six-foot stockade fence without seeking neighbor approval.[5]  The fence is undisputedly closed rather than open, taller than four feet, and erected without meeting the deed restrictions' neighbor approval requirements.[6]  Petitioners testified the fence is unattractive and unsightly, impedes the neighborhood's open parklike feel and the free flow of wildlife, obstructs drainage, and—most fundamentally—violates the Boulder Brook homeowners' mutual promise to abide by deed restrictions.[7]

B.  After the Cahills refused to remove the fence, Petitioners filed this action in January 2022 for a declaratory judgment that the fence violates the deed restrictions and for a mandatory injunction compelling its removal.[8]  The matter advanced before a Magistrate in Chancery.

---

[3] *See id.* at 1.

[4] *See id*. at 4–5.

[5] *See id.* at 6–7.

[6] D.I. 13 ¶¶ 12–15.

[7] *See* D.I. 56, Appendix at A022, A030, A037.

[8] *See* Report 7–10.

C.	On January 9, 2023, Respondents filed a complaint with the Delaware Division of Human and Civil Rights, alleging Petitioners' enforcement of the deed restrictions constituted unlawful discrimination under fair housing laws.[9] Then Respondents moved to stay the Chancery proceedings pending resolution of that complaint.[10] On May 26, the Magistrate denied Respondents' motion to stay.[11] On September 6, 2024, the Magistrate issued a Final Report recommending summary judgment in favor of Petitioners, declaring the fence in violation of the deed restrictions, and advising a permanent injunction for its removal.[12] The Magistrate concluded the injunction's irreparable harm requirement was satisfied, explaining that under Delaware law, irreparable harm is "nearly presumed" in deed restriction cases.[13]

---

[9] *See* D.I. 27 ¶ 6.

[10] D.I. 27.

[11] D.I. 38; Report 11.

[12] Report 22.

[13] *Id*. at 18 (quoting *Slaughter v. Rotan*, 1994 WL 514873, at *3 (Del. Ch. Sep. 14, 1994) ("The [homeowners within a community with deed restrictions] knowingly enter into a social contract with the other lot owners when purchasing their land. This contract includes adhering to the Restrictions' restrictive covenants. Relying on the covenant, many lot owners have invested a large amount of time and money improving their lots, including building residences for themselves. Once a restriction is breached, the [homeowners association] can never again regain the sanctity of the covenant.")).

D.     In the meantime, the Division found probable cause of a fair housing violation.[14]  In December 2024, the Delaware Department of Justice filed a civil enforcement action in Superior Court on the Cahills' behalf, contending Petitioners' continued prosecution of this Chancery action violated the Delaware Fair Housing Act, and seeking an injunction allowing the fence as a reasonable accommodation, plus damages.[15]

E.     Respondents filed exceptions to the Magistrate's Final Report, asserting it failed to properly analyze whether the fence was causing Petitioners irreparable harm.[16]  Then Respondents again moved to stay, which the Magistrate denied.[17]  The exceptions were then assigned to me, and the parties briefed them.[18] On January 31, 2025, I stayed the Chancery proceedings in my discretion pending the outcome of the Superior Court action to avoid the risk of conflicting rulings.[19]

---

[14] DI. 68 Ex. A.

[15] *Del. Human and Civil Rights Commission v. Welch*, C.A. No. N24C-12-088 KMM, D.I. 1; *see Del. Human and Civil Rights Commission v. Welch*, 2025 WL 2222967, at *1 (Del. Super. Aug. 5, 2025).

[16] D.I. 67; D.I. 81.

[17] D.I. 68; D.I. 73.

[18] D.I. 75; D.I. 81; D.I. 82; D.I. 84.

[19] D.I. 86.  Respondents took exception to the Magistrate's denial of their motion to stay. D.I. 74.  My decision to stay the case mooted those exceptions.

F.     The parties advised this Court on November 13, 2025, that the Superior Court action was concluded.[20]  I lifted the stay on November 21.[21]

**IT IS ORDERED** this 21st day of January, 2026 as follows:

1.     A hearing on the exceptions is unnecessary.  The Court has considered *de novo* the rulings in the Final Report and the record before the Magistrate.[22]

2.     I agree with the Magistrate that irreparable harm from a deed restriction violation is "nearly presumed" as a matter of Delaware law.  "Irreparable harm consists of harm for which there can be no adequate recompense at law, *i.e.*, an award of compensatory damages will not suffice."[23]  "The irreparable harm analysis is unique in the deed restriction context."[24]  "The case law indicates that ongoing violation of a restrictive covenant may constitute irreparable harm, *per se*."[25]  As then-Vice Chancellor Steele put it:

> The owners of [the restricted] lots knowingly enter into a social contract with the other lot owners when purchasing their land. This contract includes adhering to the Restrictions' restrictive covenants. Relying on the covenant, many lot owners have invested a large amount of time and money improving their lots, including building residences for

[20] *Del. Human and Civil Rights Commission v. Welch*, 2025 WL 2222967, at *1 (Del. Super. Aug. 5, 2025).

[21] D.I. 91.

[22] *See DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999).

[23] *Council of Ass'n of Unit Owners of Pelican Cove Condominium v. Yeilding*, 2020 WL 2465725, at *2 (Del. Ch. May 13, 2020).

[24] *RBY&CC East Side Homeowners Ass'n, Inc. v. Beebe*, 2023 WL 3937932, at *20 (Del. Ch. June 9, 2023).

[25] *Yeilding*, 2020 WL 2465725, at *3.

themselves. Once a restriction is breached, the Plaintiffs can never again regain the sanctity of the covenant. In my view, the Defendants' breach of the restrictive covenant . . . constitutes irreparable harm to the Plaintiffs.[26]

Delaware law also recognizes irreparable harm in the form of homeowners suffering under a violation that diminishes the enjoyment of their own property.[27] But even where the harm is "largely aesthetic," and stops short of diminishing use and enjoyment, the breach of the covenant as a social contract between homeowners is enough to support a conclusion of irreparable harm.[28]

3.    The Cahills' fence violates the deed restrictions. The violation breached Boulder Brook's social contract, and therefore caused Petitioners irreparable harm sufficient to support an injunction requiring the removal of the fence. And there is more: the fence harmed Petitioners' property by destroying the open, parklike feel the covenants protected, and causing flooding.

4.    The Cahills also argue the Magistrate did not give sufficient weight to their medical issues.[29] But the Magistrate could not have considered those issues, because the Cahills never presented them to the Magistrate for consideration: they even affirmatively told the Magistrate the record contained "the facts necessary to

---

[26] *Slaughter*, 1994 WL 514873, at *3.

[27] *Yeilding*, 2020 WL 2465725, at *3.

[28] *Id.* (citing *Slaughter*, 1994 WL 514873, at *3, and *The Cove on Herring Creek Homeowners' Ass'n, Inc. v. Riggs*, WL 1903472, at *5 (Del. Ch. Apr. 9, 2003)).

[29] ROB 16.

6

render a decision."[30]  It follows there is no good cause for me to reopen the record and consider those issues on exception.[31]

     5.     The Cahills' exceptions are **DISMISSED**.

*/s/ Morgan T. Zurn*
Vice Chancellor Morgan T. Zurn

---

[30] D.I. 79 at 4; D.I. 80 at 27.

[31] *See* Ct. Ch. R. 144(e).