**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

January 22, 2026

Geoffrey G. Grivner, Esquire
Buchanan Ingersoll & Rooney PC
500 Delaware Avenue, Suite 720
Wilmington, DE  19801

Andrew Cole, Esquire
Cole Schotz P.C.
500 Delaware Avenue, Suite 600
Wilmington, DE  19801

RE:  ***Chuang Wei Pan LLC, et al. v. Hiwin Holding LLC,***
Civil Action No. 2025-0402-LM (MTZ)

Dear Counsel,

I write to resolve the plaintiffs' exceptions to an August 29, 2025 Magistrate's Final Report (the "Final Report").[1]  The Final Report denied the plaintiffs' request to inspect books and records under 6 *Del. C.* § 18-305 on the grounds that they lack standing.  After a two-day trial, the Final Report concluded plaintiff Chuang Wei Pan LLC ("CWP") had withdrawn as a member of defendant Hiwin Holding LLC ("Hiwin" or the "Company"), and that CWP's withdrawal effectuated the removal of plaintiff Yaning Li ("Ms. Li," and together with CWP, "Plaintiffs"), and her father, nonparty Pu Li ("Mr. Li") from Hiwin's board. Plaintiffs took exception to those conclusions.[2]  On exception, I conclude CWP remained a member of Hiwin, and both Mr. Li and Ms. Li remained directors at the time of the relevant books and records demand.  Plaintiffs have standing to inspect Hiwin's books and records.

---

[1] Citations in the form "Report" refer to the Magistrate's Final Report available at docket item ("D.I.") 49.  Citations in the form "Pu Aff." refer to the Affidavit of Li Pu filed with Plaintiffs' Pretrial Opening Brief submitted to the Magistrate, available at D.I. 36. Citations in the form "POB" refer to Plaintiffs' Opening Brief in Support of Their Exceptions To The Magistrate's Final Report, available at D.I. 55.  Citations in the form "DAB" refer to Defendant's Answering Brief in Opposition to Plaintiffs' Exceptions To Magistrate's Final Report, available at D.I. 58.  Citations in the form "Tr." refer to trial testimony, available at D.I. 55, Ex. C.  Citations in the form "JX" refer to joint trial exhibits.

[2] D.I. 50; *see generally* D.I. 55.

## I.    Background

Hiwin is a board-managed Delaware limited liability company operating in the real estate development sector.[3]  Hiwin began with two members:  CWP, holding a 40% membership interest, and WXG Funding, Inc. ("WXG"), holding the remaining 60%.[4]  Hiwin has a five-person board:  CWP appoints two seats, and WXG appoints three.[5]  CWP is a Delaware LLC owned by Ms. Li and Mr. Li.[6]  WXG Funding is owned and controlled by Wang Xiaogang ("Mr. Wang").[7]  Hiwin's board comprises Mr. Li as CWP's Chairman; Mr. Wang as Vice Chair; Ms. Li as secretary and director; and two directors appointed by Mr. Wang, Wang Fanggang ("F. Wang") and Heli Song.[8]  Mr. Li's son, Dapeng Li, was appointed as a Board Observer.[9]

Hiwin's operating agreement was signed on January 2, 2024, by Mr. Wang on behalf of WXG, and Ms. Li on behalf of CWP.[10]  The operating agreement specifies that Exhibit A lists "the name, present mailing address, taxpaying identification number, and Percentage Interest of each Member," and that each entity listed on Exhibit A is a "Member" with membership rights.[11]  The operating agreement specifies that CWP as a member shall make capital contributions.[12]  It specifies CWP as a member shall designate two members of Hiwin's board of directors.[13]  It establishes how a meeting of the members can be called and held; a

---

[3] Report at 3; JX 1.

[4] JX 1 at Ex. A.

[5] JX 1 § 5.1.

[6] Report at 3.

[7] *Id.*

[8] JX 13 at 13.

[9] JX 1 § 9.1; Pu Aff.  ¶ 9.

[10] JX 1 at 1, 38.

[11] *Id.* §§ 1.18, 1.21, 2.6.

[12] *Id.* §§ 3.1, 3.2.

[13] *Id.* § 5.1.

special meeting can be called by a member, or by the Chairman of the Board.[14] And it governs member withdrawal.[15] It also offers members the right to examine and copy Hiwin's books and records.[16]

Exhibit A, the "LIST OF MEMBERS, CAPITAL ACCOUNT BALANCES, AND PERCENTAGE INTEREST," lists CWP as having a $16 million capital account balance and a 40% interest, and WXG as having a $24 million capital account balance and the other 60% interest.[17]

CWP committed to contribute $40 million to Hiwin.[18] By mid-2024, CWP had funded approximately $31.5 million.[19] Around that time, Mr. Li grew concerned about suspected mismanagement and was reluctant to contribute additional funds.[20] By August 2024, tension peaked when Mr. Wang refused to permit an audit.[21]

**A. CWP Discusses Withdrawal And Pursues Information.**

On August 19 or 20, Mr. Li and Mr. Wang met in person in New York.[22] During the meeting, Mr. Li told Mr. Wang that he wanted to resign as the chairman of the board and suggested that Mr. Wang take the position.[23] Mr. Wang tried to dissuade Mr. Li from resigning.[24] They discussed CWP's potential exit options—a buyout by Mr. Wang, by new U.S. investors, or by new Chinese investors—but

---

[14] *Id.* § 5.2.

[15] *Id.* §§ 7.1, 7.3, 7.4, 11.1.

[16] *Id.* §§ 1.21, 10.2.

[17] *Id.* at Ex. A.

[18] JX 1 §§ 3.1, 3.2.

[19] Tr. 155:11–13, 157:16–17.

[20] Pu Aff. ¶¶ 14–20.

[21] *Id.* ¶¶ 21–22.

[22] Tr. 124:12–17.

[23] *Id.* 126:1–10.

[24] *Id.* 124:15, 125:1–22.

reached no concrete solution.[25]  While Mr. Wang testified he and Mr. Li "reached a consensus and made a decision" regarding Mr. Li's withdrawal, Mr. Wang acknowledged that no specific exit plan was finalized.[26]

On August 24, Mr. Li sent a WeChat message (the "August 24 Message") addressing CWP's withdrawal.[27]  The parties dispute whether it states CWP "withdrew," or "will withdraw."[28]  Mr. Li suggested Hiwin treat CWP's investment as a loan, either repaying it by the end of the month or converting it into a loan agreement with a higher interest rate.[29]  Mr. Wang and Mr. Li offer varying perspectives on whether the August 24 Message was before or after an in-person conversation at Mr. Li's daughter's home in New York.[30]

Mr. Wang replied to the August 24 Message about an hour later, stating this notification "was very sudden" and he and his team will "study and explore as soon as possible to find a feasible solution."[31]

Over the next few weeks, Mr. Li continued to prod Mr. Wang for a resolution, and Mr. Wang remained equivocal.  On August 27, Mr. Li pressed Mr. Wang to "give [them] a solution for withdrawing from [Hiwin]" by the end of the

---

[25] *Id*. 129:8–130:10.

[26] *Id*.

[27] JX 8 at 2–3; JX 77 at 1–2.  On WeChat, Mr. Li uses the nickname "Believer"; Mr. Wang uses "Frank"; F. Wang uses "Wang Fanggang"; Heli Song uses "Harry"; and Ms. Li uses "Dan Feng Bai Lu."  *See generally* JX 6.

[28] JX 8 at 3; JX 77; POB 13; DAB 16.

[29] JX 8 at 2–3; JX 77 at 1–2.

[30] *See* JX 53 at 77:19–78:18 (Mr. Wang testifying in his deposition that he saw the August 24 Message first, then met Mr. Li in person the next day where he formally requested withdrawal); Tr. 124:24–133:16, 180:1–18 (Mr. Wang testifying at trial that he and Mr. Li met in person first, where Mr. Li announced his withdrawal, and that Mr. Li sent the August 24 Message later the same day); JX 61, 63:23–65:25 (Mr. Li testifying at his deposition that there was no in-person interaction after the August 24 Message); Pu Aff. ¶ 23 (describing the August 24 Message as demanding his investment be returned or converted to a loan, as "the necessary precondition for which I will resign as the chairman of the Board of directors").

[31] JX 8 at 4.

month.[32]  Mr. Wang replied the next day, expressing uncertainty about whether Mr. Li really intended to withdraw CWP.[33]  Two days later, Mr. Li again pressed for a way to withdraw.[34]  Mr. Wang replied a few days after that, indicating his understanding that withdrawal was far from final.[35]

On September 9, Mr. Li again pressed for a withdrawal plan, as well as the return of interest, retroactive execution of the investment agreement, and related receipts.[36]  He gave Mr. Wang three days to respond.[37]  On September 10, F. Wang chimed in, indicating the matter was still in flux.[38]  Mr. Wang replied the same day that he had been trying to communicate and "leak the news," but had yet to find a feasible solution.[39]  The next day, Mr. Li expressed frustration and stated he felt he was "forced [] to withdraw" due to Mr. Wang's actions, and emphasized his September 9 conditions.[40]

---

[32] *Id.*

[33] *Id.* at 4–5.

[34] *Id.* at 5.

[35] *Id.* at 6 ("[R]egarding whether you withdraw or not, I respect your choice, and sincerely hope that you can consider it all, so that I will not attend to one thing but lose sight of another, and bear more pressure; you have several specific requirements on the withdrawal, at this stage the cash flow will be very tight in the short term . . . .").

[36] *Id.* at 6–7.

[37] *Id.*

[38] *Id.* at 8 ("Li Uncle, message received.  I will urge [Mr. Wang] in my own way to come up with a workable solution that is acceptable to both parties as soon as possible.").

[39] *Id.*

[40] *Id.* Plaintiffs contend Defendant's translation omits the word "request," and that the proper translation should be "forced me to request to withdraw," rather than implying a completed withdrawal.  POB 18.

**B. CWP Pushes For Information.**

Thereafter, Mr. Li stopped discussing withdrawal and stopped demanding Hiwin return his investment.[41]  He started pursuing information as a member and director.

On October 1, 2024, CWP (through counsel) sent a demand to Hiwin for full access to Hiwin's books and records, pursuant to the operating agreement and "Delaware law."[42]  Hiwin and WXG responded on October 8:  Hiwin agreed to produce certain books and records not already in CWP's possession, conditioned on CWP paying copying costs per the operating agreement.[43]  Hiwin did not dispute CWP's status as a member.[44]  Hiwin's response did not mention any withdrawal by CWP.[45]

On October 13, Mr. Li urged the board take action to conduct the audit, expressly invoking his status "as a shareholder and the chairman of the board" who "[has] the right to investigate any business and financial transactions of [Hiwin] at any time[.]"[46]

On October 16, Mr. Wang messaged Mr. Li about CWP's membership status.[47]  He addressed Mr. Li as "Chairman" and stated, "Regarding the withdrawal of Chuang Wei Pan LLC, [the Company is still] seeking a feasible solution through lawyers and potential investors, [with] no substantial progress."[48]

---

[41] JX 4; JX 5; JX 6; JX 8 at 8–10.

[42] *See generally* JX 9; *see also* JX 1 §§ 1.21, 10.2.

[43] JX 10.

[44] *Id*.

[45] *Id*.

[46] JX 8 at 9.

[47] *Id*. at 9–10.

[48]  *Id*.

CWP sent a second demand for books and records on October 30, and agreed to pay reasonable copying costs.[49] CWP also renewed its request for an independent audit of Hiwin's finances.[50] On November 7, Hiwin produced a limited subset of financial records,[51] including a "General Ledger" that lists CWP as a member with "Total Equity" of $31,483,724.[52] This ledger covered transactions through at least October 31, 2024.[53] On November 15, Hiwin produced contracts for the purchases of real properties.[54]

On December 5, CWP and Mr. Li sent a third demand seeking the production of additional books and records, focused on investigating alleged breaches of fiduciary duty.[55] Hiwin did not respond.[56]

On March 15, 2025, Song sent Mr. Li CWP's K-1 for Hiwin, with a cover letter to CWP from the accountant explaining, "It contains your share of the limited liability company's items of income/loss, deductions, credits, and other information for the limited liability company's tax year ended December 31, 2024."[57] The K-1 form identified CWP as a 39.6753% member of Hiwin, with an ending capital account of $31,541,701—the same number on the General Ledger.[58] The K-1 did not have the "Final K-1" box checked.[59]

---

[49] *See* JX 11.

[50] *See id.* at 1.

[51] *See* JX 12 at 1; JX 14.

[52] JX 18 at 3.

[53] *See generally* JX 18; Tr. 153: 21–22.

[54] *See* JX 12 at 4.

[55] JX 17.

[56] *See* JX 39 ¶¶ 15, 16.

[57] JX 22; JX 39 ¶ 5; Tr. 34: 19–24.

[58] JX 22.

[59] *Id.*; Tr. 25: 17–20.

## C. March 2025 Board Meeting Efforts

Mr. Li continued to exercise his managerial powers and CWP's membership status. On March 17, 2025, Mr. Li announced a board meeting to be held on March 26.[60] Mr. Li proposed an agenda including "Decision on the amount of the third capital injection by [WXG] and [CWP.]"[61] Three days later, Mr. Li asked Hiwin for documents before the meeting, explaining he was "writing as Chairman of the Board of Hiwin Holding LLC on behalf of the Company's Board of Directors and significant holder, [CWP]."[62]

Mr. Li's call for a board meeting inspired a flurry of communication. Mr. Wang suggested postponing it.[63] Mr. Li wanted to hold it as scheduled; so did Dapeng Li and Ms. Li.[64] Mr. Li tried to recruit F. Wang to advocate for holding the meeting.[65] The morning of the meeting, there was more discussion about whether it would be held and where F. Wang stood.[66] Neither F. Wang nor Mr. Wang attended the board meeting; the attendees were Mr. Li, Ms. Li, and Dapeng Li.[67]

On March 31, CWP, Ms. Li, and Mr. Li delivered the fourth and final demand to inspect Hiwin's books and records under the operating agreement and Section 18-305 (the "Fourth Demand").[68] Hiwin did not produce any more documents in response to the Fourth Demand.

---

[60] JX 4 at 2.

[61] *Id*.

[62] JX 5.

[63] JX 6 at 2–3.

[64] *Id*. at 3–4.

[65] *Id*. at 2.

[66] *Id*. at 5.

[67] *Id*.; *see generally* JX 16.

[68] *See* JX 23.

### D. Litigation Ensues.

On April 14, Plaintiffs filed this action.[69]  On April 21, Hiwin's counsel sent Plaintiffs a letter taking the position that Mr. Li had voluntarily withdrawn CWP from Hiwin as of December 31, 2024.[70]  In its May 16 Answer, Hiwin claimed for the first time that Ms. Li was no longer a Secretary of Hiwin, and Mr. Li was no longer the Chairman of the Board.[71]

On July 7, 2025, Mr. Wang unilaterally signed a formal Board resolution purporting to retroactively acknowledge that CWP had withdrawn from Hiwin effective December 31, 2024.[72]  The resolution dissolved Hiwin's five-member Board, removed Ms. Li as Board secretary, and noted Hiwin's obligation to pay CWP the value of its interest.[73]

A Magistrate in Chancery held a two-day trial on August 12 and August 13, 2025.[74]  On August 29, the Magistrate concluded Plaintiffs lacked standing to inspect Hiwin's records because "Mr. Li's offer to withdraw constituted an attempt to withdraw" and "the withdrawal of [CWP] also effectuated a withdrawal of Ms. Li's qualifying status on the board."[75]  Plaintiffs took exception to those conclusions, via briefing that closed on November 21, 2025.[76]  I have considered the evidence before the Magistrate *de novo*.[77]

---

[69] D.I. 1; JX 33.

[70] JX 7.

[71] *See* JX 34 ¶¶ 5, 6.

[72] JX 76.

[73] *Id.*

[74] D.I. 45.

[75] Report at 23.

[76] D.I. 55; D.I. 58; D.I. 60.

[77] *DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999); *Hauppauge Digital, Inc. v. Rivest*, 300 A.3d 1270, at *5 (Del. 2023) (TABLE); Ct. Ch. R. 144(a).

## II.    Analysis

Section 18-305(a) of the LLC Act provides inspection rights to "[e]ach member of a limited liability company."[78]  "Section 18-305's corporate analogue, 8 *Del. C.* § 220, provides guidance on its scope.  Section 220 'plain[ly] and unambiguous[ly]' limits inspection rights to current stockholders and directors."[79]

Books and records actions are summary.[80]  So Delaware law circumscribes how deeply the Court will dive to determine if the plaintiff has standing. "'Caselaw determining who is a stockholder or a holder of record under Section 220'—the corporate analog of Section 18-305—'generally relies on the corporation's existing stock ledger. 'In a typical case, the stock ledger controls record-stockholder status, and a stockholder may point to the stock ledger to show, *prima facie*, that she is in fact a holder of record.'"[81]  "[W]hen a stock ledger exists and no other reason appears to question its authenticity or accuracy, our law has always accorded *prima facie* stockholder status to one whose name appears on such a ledger."[82]  For LLCs, the "analog" of an existing stock ledger is an existing, valid membership list.[83]

While a ledger or membership list is *prima facie* evidence of standing in a books and records proceeding, the Court may look beyond those documents in limited circumstances, and the *prima facie* case may be rebutted by clear and convincing evidence.[84]  Balancing the summary nature of a Section 18-305 action

---

[78] 6 *Del. C.* § 18-305(a), (b).

[79] *Prokupek v. Consumer Cap. P'rs LLC*, 2014 WL 7452205, at *6 (Del. Ch. Dec. 30, 2014).

[80] *KT4 P'rs LLC v. Palantir Techs. Inc.*, 203 A.3d 738, 754 (Del. 2019) ("Books and records actions are not supposed to be sprawling, oxymoronic lawsuits with extensive discovery . . . the Court of Chancery is entitled to 'summarily order' an inspection.").

[81] *Gill v. Regency Hldgs., LLC*, 2023 WL 4607070, at *10 (Del. Ch. June 26, 2023) (internal quotations and citations omitted).

[82] *Holtzman v. Gruen Hldg. Corp.*, 1994 WL 444756, at *2 (Del. Ch. Aug. 5, 1994).

[83] *Mack Brothers v. Keypoint Intel., LLC*, 2025 WL 3041804, at *6 (Del. Ch. Oct. 29, 2025).

[84] *See Pogue v. Hybrid Energy, Inc.*, 2016 WL 4154253, at *3 (Del. Ch. Aug. 5, 2016).

against an LLC's relative informality, the Court will undertake a narrow inquiry to consider other instruments reflecting ownership, mindful of their distance from the membership list.[85] The Court will entertain a standing defense based on documents other than a membership list where the defense could be resolved based on factual admissions or contractual interpretation.[86] For example, in *Pogue v. Hybrid Energy, Inc.*, the Court declined to rely on a ledger where the plaintiff conceded the stock issuance through which he obtained his stock was void.[87] In *Prokupek v. Consumer Capital Partners LLC*, the Court dismissed a books and records action where the Court could determine as a "matter[ ] of contract interpretation" that the plaintiff "was no longer a member of [the company] when he demanded inspection" because the LLC had redeemed the plaintiff's interest pursuant to unambiguous contract terms.[88] And in *Gill v. Regency Holdings, LLC*, the Court found *prima facie* evidence of standing in an operating agreement and an attached membership interest ledger, later amended by two assignment agreements and a board resolution.[89] While the defendant argued the assignment agreements were invalid, the Court declined to engage with that attenuated argument.[90]

Here, the trial record contains a valid membership list that explicitly states CWP is a member of Hiwin. That list affords CWP *prima facie* membership status. The evidence offered to rebut that *prima facie* case is too attenuated to consider in this summary proceeding, and far from clear and convincing.

### A. The Trial Record Contains A Membership List.

Plaintiffs seek to establish CWP's *prima facie* membership status based on Hiwin's general ledger produced on November 7, 2024.[91] While that general ledger reports the value of Hiwin equity held by CWP and WXG, it is at bottom an

---

[85] *Mack Bros.*, 2025 WL 3041804, at *5, *7; *Gill*, 2023 WL 4607070, at *9–11.

[86] *See Gill*, 2023 WL 4607070, at *10.

[87] 2016 WL 4154253, at *3.

[88] 2014 WL 7452205, at *3–4.

[89] 2023 WL 4607070, at *10–11.

[90] *Id.*

[91] *See* POB 44.

accounting ledger.[92] The general ledger was not created to reflect Hiwin's membership. It may go too far to determine *prima facie* ownership based solely on that document.

There is a membership list in the record: Hiwin's undisputedly valid operating agreement. "All considerations of an LLC's internal governance commence by examining the LLC agreement."[93] The agreement repeatedly designates and treats CWP as a member,[94] and lists CWP as a member in the incorporated Exhibit A's "list of members."[95] It further links membership status to specific governance rights, including voting rights[96] and inspection rights.[97]

No party has disputed the validity of the agreement in any respect. Nor was the agreement amended as of the Fourth Demand, notwithstanding its requirement that it be amended to reflect membership changes.[98] Indeed, Mr. Wang's purportedly retroactive July 7, 2025 resolution does not reference any amendment to the operating agreement.[99]

The signed operating agreement and its attached Exhibit A constitute *prima facie* evidence that CWP is a Hiwin member. The next question in the analysis is whether there is clear and convincing evidence, of a sort the Court will consider, to

---

[92] *See* JX 18; *e.g.*, *Doerler v. Am. Cash Exchs., Inc*. 2013 WL 616232, at *7 (Del. Ch. Feb. 19, 2013) (ordering production of a general ledger because "[a]ccess to the general ledger is necessary and essential to determining whether and to what extent the [stockholders] are continuing to use [the company]'s cash as their own"); *DFG Wine Co., LLC v. Eight Ests. Wine Hldgs., LLC*, 2011 WL 4056371, at *9 (Del. Ch. Aug. 31, 2011) ("A general ledger would be part of the '[t]rue and full information regarding the status of the business[.]'").

[93] *See In re Coinmint, LLC*, 261 A.3d 867, 900 (Del. Ch. 2021).

[94] JX 1 §§ 3.1, 3.2, 5.1, 5.2.

[95] *Id.* § 2.6, Ex. A.

[96] *Id.* §§ 5.10, 5.11.

[97] *Id.* §§ 1.21, 10.2.

[98] *Id.* §§ 1.18, 1.28, 11.3.

[99] JX 76.

rebut that presumption and prove CWP withdrew before sending the operative demand letter.

### B. The Record Does Not Contain Evidence Of A Type Or In An Amount To Rebut The Membership List.

Hiwin's standing challenge relies on its reading of the August 24 Message, which it argues withdrew CWP from Hiwin.[100] The August 24 Message is not the type of straightforward instrument or admission that the Court will consider for a standing defense.[101] It is not an unambiguous contract, as in *Prokupek* and *Gill*, or a factual admission, as in *Pogue*.[102] It is a small excerpt from months of negotiations over WeChat. And its translation is disputed: Hiwin contends it states CWP "withdrew," while Plaintiffs press it states CWP "will withdraw."[103] The parties also dispute whether the August 24 Message was sent before or after an in-person discussion of CWP's withdrawal.[104] It is impossible to determine whether CWP withdrew in the August 24 Message without considering the rest of the parties' dealings and subsequent acts. The August 24 Message is not the sort of evidence that the Court will consider to rebut a membership list, and it is not clear and convincing evidence of CWP's withdrawal. It does not rebut the presumption that CWP is a member.

---

[100] *See* DAB 32.

[101] *See Pogue*, 2016 WL 4154253, at *3; *Prokupek*, 2014 WL 7452205, at *3–4; *Gill*, 2023 WL 4607070, at *9–12.

[102] *Pogue*, 2016 WL 4154253, at *3; *Prokupek*, 2014 WL 7452205, at *3–4; *Gill*, 2023 WL 4607070, at *9–12.

[103] *See* JX 8 at 3; JX 77; POB 13; DAB 16. This divergence stems from a feature of Mandarin Chinese: "[u]nlike English, Chinese verbs are 'tenseless', i.e., the verb form remains the same no matter when the event happens. Event time may be inferred with an explicit time adverb or aspectual marker, or rely completely on the context for temporal reference." LIU, MEICHUN, THE OXFORD HANDBOOK OF CHINESE LINGUISTICS (William S-Y. Wang, & Chaofen Sun, ed. 2015), https://doi.org/10.1093/oxfordhb/9780199856336.013.0070. Neither party articulated why its version of the translation should be deemed more accurate than the other's. *See* POB 13; DAB 30, 38.

[104] *See supra* note 30.

If I were to accept Hiwin's invitation to interpret the August 24 Message, I would not be able to conclude there is clear and convincing evidence that CWP withdrew. Mr. Wang's responses were conciliatory and noncommittal, and indicate CWP had not yet withdrawn.[105] Later communications among Mr. Wang, Mr. Li, and other Hiwin directors reflected a similar degree of uncertainty and deference to Mr. Li.[106] Then Hiwin produced documents upon Mr. Li's request under the operating agreement,[107] and entertained Mr. Li's request for a board meeting,[108] indicating Hiwin believed CWP was still a member. Hiwin did not dispute CWP's membership status until after Plaintiffs initiated this action.

Determining the August 24 Message's effect would also require holding it up to the light of Hiwin's operating agreement provisions governing member withdrawals. But a key provision governing withdrawal is arguably ambiguous, potentially requiring extrinsic evidence to interpret.[109] This adds to the burden of determining whether the August 24 Message effectuated CWP's withdrawal.

I cannot accept the August 24 Message as plain, clear, and convincing evidence that CWP withdrew. As the trial and Final Report in this matter reflect,

---

[105] *See, e.g.*, JX 8 at 4–6.

[106] *Id.* at 2–5, 10.

[107] *See generally* JX 10; JX 12; JX 14.

[108] JX 6; JX 16.

[109] Section 1.39 of Hiwin's operating agreement defines "Voluntary Withdrawal" as "a member's attempted dissociation from the Company by means other than by a transfer or an Involuntary Withdrawal." JX 1 § 1.39. By its plain terms, any attempt by a member to dissociate (apart from a transfer or an involuntary removal) would itself be treated as a completed "Voluntary Withdrawal." But Article 7 envisions a structured process: a member may initiate a voluntary withdrawal by giving a mandatory formal notice followed by a waiting period (Sections 7.1 and 11.1), after which the member is entitled to have its interest be valued and purchased through an appraisal process (Sections 7.3 and 7.4). Giving effect to an attempt at withdrawal would nullify those procedures. Plaintiffs argue the confusing language was inadvertently carried over from an earlier draft in which voluntary withdrawal was forbidden. *See* JX 19, §§ 1.39, 7.1 (prior draft of the operating agreement where voluntary withdrawal, including any attempt, was precluded); JX 1, §§ 1.39, 7.1 (permitting voluntary withdrawal with an unrevised Section 1.39 definition).

interpreting that message "effectively convert[ed] a summary books and records proceeding into a plenary action."[110]  Hiwin's operating agreement offered *prima facie* evidence that CWP was a Hiwin member.  The Company offered no evidence to rebut that *prima facie* presumption that could be considered without performing a plenary investigation.

As comfort, I note the evidence that would be proper to consider in assessing standing tends to show CWP did not withdraw before sending the Fourth Demand.[111]  Hiwin's 2024 K-1 does not indicate it was CWP's final K-1.[112]  The general ledger produced in November 2024 dockets CWP as holding $31.5 million in equity.[113]  And there is no evidence that CWP followed the operating agreement's withdrawal procedures, such as delivering notice.[114]

One last issue remains:  whether Mr. Li and Ms. Li are CWP directors.  The Magistrate's conclusion that Mr. Li and Ms. Li are no longer Hiwin directors was based entirely on CWP's withdrawal.[115]  I have no basis to conclude they are not Hiwin directors.

## III.  Conclusion

Upon *de novo* review, I conclude Hiwin's membership list provides *prima facie* evidence supporting a presumption that CWP was a member as of the Fourth Demand, and that Hiwin's standing defense failed to present plain, clear, and convincing evidence to prove otherwise.  I conclude CWP has standing to inspect the documents sought in the Fourth Demand.  The matter is remanded to the Magistrate.

---

[110] *Gill*, 2023 WL 4607070, at *11.

[111] *Mickman v. Am. Intern. Processing, LLC*, 2009 WL 891807, at *2 (Del. Ch. Apr. 1, 2009) (considering a Schedule K-1 and an Offer in Compromise submitted to the IRS).

[112] *See* JX 22.

[113] *See* JX 18.

[114] JX 1 §§ 7.1, 11.1; POB 28–29 (It is undisputed that neither [CWP] nor Mr. Li provided the 90 days prior notice of withdrawal. . . . WeChat messages are not emails and there was no mailing of such messages by Federal Express or otherwise.").

[115] *See* Report at 23.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc:  All Counsel of Record, via *File & ServeXpress*